EUGENE J. VENEZIA *vs.* TOWN OF FAIRFIELD ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued January 2d—decided April 6th, 1934.

*David S. Day* and *John C. Thompson,* with whom, on the brief, was *Edward J. McCarthy,* for the appellants (defendants).

*Jacob Y. Sachs,* with whom, on the brief, was *Irvin M. Davis,* for the appellee (plaintiff).

AVERY, J.  This action is brought by the plaintiff, a subcontractor who furnished material and labor under a general contract for the construction of a high school building in the defendant town.  The action was brought by virtue of the provisions of § 5109 of the General Statutes (Cum. Sup. 1933, § 1113b) which provides that, with certain exceptions, upon the making of a contract by the State or any subdivision thereof for the construction or alteration of a public building, the officer or agent making the contract shall take from the contractor a bond for the performance

of the contract and the payment of all materials and labor used in its execution, and that any person having a claim for materials or labor so used may file with the proper officer a statement of it which, if found correct, shall be paid by the officer or agent, reimbursement for the sums so spent to be a liability under the bond.

The assignments of error raise questions concerning facts found and omitted by the referee, and certain rulings upon evidence. From the finding of the referee, with such corrections as the appellants are entitled to, the following facts appear: About February 1st, 1930, the defendant town of Fairfield contracted with the defendant Central Engineering and Construction Company as general contractor for the erection of a high school building known as the "Roger Ludlowe High School Addition." In October, 1930, the contractor sublet the plastering work to the plaintiff at the agreed price of $14,650. Before the plaintiff made his bid for the plastering to be done by him, the contractor submitted to him a plan and a copy of a set of specifications. The plan indicated a certain amount of ornamental plastering to be done under the contract. The specifications which the contractor gave to the plaintiff, upon which to estimate and fix his bid, provided that the ornamental plastering work on the ceiling, etc., should be "of stock patterns from the shops of Jacobson & Company, of New York." The plaintiff did not purchase the patterns from Jacobson & Company, but placed his order therefor with Hammill & Company, another concern in the same line of business. In a supplemental bulletin, the architect set forth that the patterns of other responsible plaster companies would be approved provided they were the same as those prepared by Jacobson & Company. No objection was made by the architect, who drew the

plans and specifications and was in charge of the work for the town, to allowing Hammill & Company to furnish the patterns, and such patterns were approved by him and by the contractor.

In asking Hammill & Company to give him a price for the necessary patterns, plaintiff gave them the plans and specifications given to him by the contractor. Having received from Hammill & Company its price, the plaintiff used the same in fixing the contract price of $14,650. In addition to the plan prepared by the architect, Jacobson & Company made certain shop drawings showing in detail the ornamental walls and ceiling work. Only one set of these detailed drawings existed. Neither the pink sheets nor the shop drawings provided by Jacobson & Company were exhibited to the plaintiff by the contractor or architect previous to his bid for the work, and his bid was based upon the general plan and the specifications. A few weeks after the contract had been awarded to the plaintiff by the contractor and before work had been commenced thereunder, and after Hammill & Company had quoted a price for furnishing the patterns as shown on the plan and specifications, the plaintiff, for the first time, saw the detail or shop drawings in the office of Hammill & Company in the city of Worcester. They called his attention to them and stated to him that such drawings indicated a much more elaborate and ornamented ceiling than was indicated upon the plan and specifications which plaintiff had given to them, upon which to make a price for the patterns required, and informed him that they withdrew their offer. The plaintiff thereupon notified the contractor of the existence of the shop drawings and informed it that plaintiff's bid for the work would be withdrawn unless the contractor would agree to pay the additional cost of the patterns and the value of the extra labor required to install

such additional work. As a result of this conversation, the contractor agreed to pay to the plaintiff the additional sum of $350 which was to be added to plaintiff's contract price of $14,650, and represented the further sum required by Hammill & Company for the additional patterns shown on the shop drawings.

The contractor also agreed to pay the plaintiff the costs of the extra labor which would be required as follows: The contractor had or expected to have the contract for building another schoolhouse at New Bedford, and would give the plastering work for that job to the plaintiff, who could add to his bid for such plastering work the cost of the extra work to be done on the walls and ceiling of the Fairfield job. This offer was accepted by the plaintiff who proceeded to perform the work required. The principal contractor received the contract for constructing the New Bedford school but did not give the plastering work thereon to the plaintiff, neglecting and refusing to do so although the plaintiff was ready and willing to perform such work. The referee, after crediting the contractor with payments made to the plaintiff or on his behalf, and after various adjustments which are not in question on this appeal, found that there was due to the plaintiff $2466.55, with interest thereon from August 15th, 1931, the date when the writ in the action was served. In arriving at this sum, the referee credited the plaintiff for extra labor required for additional ornamental plastering not shown on the original plan, $2077.50. The matters really in dispute on this appeal are the allowance of this credit for the additional cost of the plastering and the item of interest.

With reference to the allowance made for extra work, there is testimony in the record that the ornamentation of the ceiling in installing which that work was performed was not reasonably indicated upon the

plans submitted the plaintiff and not included in his bid; indeed, the fact that the general contractor agreed to and did increase the amount to be paid the plaintiff by the cost of the casts for this ornamentation furnishes very strong evidence in support of the referee's conclusion. There is also evidence to support the finding of the referee as to the agreement made with the plaintiff with reference to recompensing him for the labor of installing the extra ornamentation. While the testimony of the plaintiff as to the number of hours of work which was required, which is the basis of the referee's conclusion as to the amount to which the plaintiff was entitled, is not entirely clear, we cannot say that the referee could not reasonably construe it as meaning that the plaintiff was put to the cost of expending thirteen hundred and eighty-five hours in installing the extra work, thus justifying the conclusion that the value of the labor was $2077.50. No correction of the finding is permissible from the evidence certified by which the defendants' position would be advantaged in this respect.

Turning to the rulings on evidence, the plaintiff was permitted to testify as to the reasonable value of the labor necessary to install the additional ornamental work in the ceiling. It is uncertain from the record that the remonstrants took any exception to the ruling which permitted this testimony. The claim of law made in the appellants' brief appears to be to the effect that in this ruling and others made by the court relating to the amount of extra work done, the referee erred in permitting testimony to be given by the plaintiff, who should have been required to produce books of account showing the amount of extra work done, and until such books had been produced should not have been permitted to testify. It does not appear that there were any regular books of account, but even

upon that assumption the objection is not tenable. While books of account are admitted in evidence upon the proper showing of the manner in which they have been kept (General Statutes, Cum. Sup. 1931, § 606a) and when so admitted are treated as original evidence of the matter for which they are introduced, the testimony of the party who performed the work and is familiar therewith is the primary evidence of the facts, and the books of account in such cases are received as corroborative testimony of the party, but there is no principle of law which makes the books the only evidence. *Smith* v. *Law*, 47 Conn. 431, 436; *Cowdery* v. *McChesney*, 124 Cal. 363, 365, 57 Pac. 221; *Rissler* v. *American Central Ins. Co.*, 150 Mo. 366, 373, 51 S. W. 755; *Halverson* v. *Seattle Electric Co.*, 35 Wash. 600, 608, 77 Pac. 1058; 3 Wigmore, Evidence (2d Ed.) § 1558.

The defendant had a certain letter from the contractor to the plaintiff marked for identification and then asked the plaintiff if he had replied to it. The plaintiff answered, that he had not and the trial court excluded the letter. From the defendants' brief it appears that their real purpose was to obtain the benefit of certain notations made in pencil upon the letter which they claimed as admissions by the plaintiff of the amount due him. The defendants were permitted to cross-examine the plaintiff at length as to these notations. The plaintiff denied knowing what the figures meant and it was not otherwise shown what they signified. The referee properly ruled that the penciled notations upon this letter were not admissible until their relevancy to the matter in issue appeared. Curley, who had a subcontract from the plaintiff to do the lathing, was called as a witness by the remonstrant contractor and testified that he had discussed with the plaintiff the figure bid by Jacobson & Company and

knew it to be $3500, whereupon counsel for the plaintiff objected and the referee excluded further examination along that line, to which counsel for the defendant excepted. No motion was made to strike out the testimony of the witness and no ruling was made upon any specific question; in fact, the witness was not inquired of further in relation to the matter, and no statement was made as to the purpose of the testimony. Apparently the referee intended to exclude further testimony relating to the amount of the Jacobson bid which, as far as appears from the remonstrance, was irrelevant to the question at issue. Upon the record the ruling complained of did not constitute reversible error. Two letters were excluded by the referee: one from an architect of the defendant town to Hammill & Company, and the other an answer to this letter from Hammill & Company. There was nothing to show that these letters were binding upon the plaintiff. Their contents were, therefore, irrelevant to the issue.

There being no sufficient testimony upon which the referee might determine when the plaintiff completed his contract, he allowed interest from the date of the writ. The specifications provided that the architect might withhold his certificate of payment in the event of the filing of liens or claims or if the contractor failed to make payments to subcontractors or for materials or labor, and also that neither the final payment nor any part of the retained percentage should become due until the contractor, if required, should deliver to the owner a complete release of all liens arising out of this contract, or receipts in full in lieu thereof. They also provided that the subcontractors agreed to be bound to the contractor by the terms of the contract document and to assume toward it the obligations and responsibilities which the contractor thereby assumed

toward the owner. The Silliman & Godfrey Company presented a claim of $874.80 for materials furnished the plaintiff which he had failed to pay prior to the institution of this suit. It does not appear, however, that the architect withheld his certificate of payment. Under the agreement between the plaintiff and the contractor, the latter was empowered to pay directly to subcontractors for materials furnished the former and charge the same to him, but the contractor was not under any obligation to do so. The record discloses no right of the contractor, at least at the time the action was brought, longer to withhold the amount due the plaintiff. Interest is allowed as damages for the wrongful detention of money and the question in each case is whether the detention is or is not wrongful under the circumstances. *Capitol City Lumber Co.* v. *Sudarsky,* 95 Conn. 336, 341, 111 Atl. 349; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 Atl. 134; *Stoddard* v. *Sagal,* 86 Conn. 346, 350, 85 Atl. 519; *New York, N. H. & H. R. Co.* v. *Ansonia L. & W. P. Co.,* 72 Conn. 703, 705, 46 Atl. 157. Under these circumstances, it was not error to allow the plaintiff interest from the date of the writ.

There is no error.

In this opinion the other judges concurred.