CECIO BROTHERS, INC. *v.* C. RUSSELL FELDMANN

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 14—decided June 3, 1971

*Morgan P. Ames,* with whom was *Edward G. Mellick,* for the appellant (defendant).

*John G. Heagney,* with whom, on the brief, was *Francis X. Lennon, Jr.,* for the appellee (plaintiff).

SHAPIRO, J. By writ dated August 31, 1962, the plaintiff brought an action in the Court of Common Pleas against the defendant seeking to recover the sum of $6364.57 as a balance due it for materials sold and delivered and for supplying machinery and labor to the defendant and claiming $8000 damages including interest and costs. The defendant denied all the allegations of the plaintiff's complaint and

filed a special defense and a counterclaim seeking damages of $20,000. On motion of the defendant, the matter was transferred to the Superior Court on November 2, 1962. By stipulation of the parties, filed on October 7, 1966, the case was referred to Honorable James C. Shannon, a state referee, as a committee, to hear the evidence and report the facts to the court. On August 1, 1969, however, acting as the court, the referee rendered judgment for the plaintiff on the defendant's counterclaim and on its complaint to recover from the defendant the sum of $6364.57 with interest from July 14, 1961. From that judgment the defendant has appealed to this court.[1]

The defendant assigns error in the referee's refusal to find 104 paragraphs of his 337-paragraph draft finding on the claim that they are admitted or undisputed. Some either are merely more detailed statements of fact already incorporated in the finding or cover matters on which there was dispute in the testimony. *Bent* v. *Torell,* 139 Conn. 744, 748, 97 A.2d 270. Facts can be added to the finding only when they are admitted or undisputed. *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 223, 215 A.2d 123. A fact is not admitted or undisputed merely because it has not been contradicted. The question of credibility is for the trier. *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274; *Jarrett* v. *Jarrett,* 151 Conn. 180, 181, 195 A.2d 430; *Shakro* v. *Haddad,* 149 Conn. 160, 162, 177 A.2d 221. Many proposed paragraphs consist of immaterial matters.

---

[1] The record does not disclose a reference under General Statutes § 52-434, following the appointment of the referee in 1966 as a committee pursuant to General Statutes § 52-425, an appointment which was never revoked. We treat the matter as did the parties, as if the 1966 reference had been revoked and a new reference made under § 52-434.

*Starkel* v. *Edward Balf Co.*, 142 Conn. 336, 337, 114 A.2d 199. In effect, the defendant is attempting to retry the case on appeal, a practice that has been repeatedly discountenanced. *Sipp* v. *Sipp*, 151 Conn. 705, 197 A.2d 73. He has made a wholesale attack on the court's finding which is unwarranted and, in addition, needlessly requires that a good deal of our time be utilized in a fruitless task. We have repeatedly pointed out that attacks of this nature rarely produce any beneficial results. *Morrone* v. *Jose*, 153 Conn. 275, 276, 216 A.2d 196; *Franchey* v. *Hannes*, 152 Conn. 372, 374, 207 A.2d 268; *Jarrett* v. *Jarrett*, supra; *Adamsen* v. *Adamsen*, 151 Conn. 172, 173, 195 A.2d 418.

The court found the following unchallenged facts: In the spring of 1961, the defendant owned an estate in Stamford. The plaintiff was engaged in the business of general excavating, paving, drainage and various kinds of site construction work. At the defendant's request, the plaintiff submitted a proposal dated April 17, 1961, to perform specific items of work relative to resurfacing specific areas and to build a new road, at fixed contract prices which the defendant rejected. The plaintiff then submitted, by letter, a statement of its labor and equipment price list and was hired by the defendant on the basis of unit prices. It commenced working on the defendant's premises, doing road surfacing and performing other road work as well as building and rebuilding walls, resetting flagstones and other construction. The plaintiff began the work on April 26, 1961, and continued until June 30, 1961, during which time it delivered daily reports to the defendant of the work performed and material supplied to the job. The plaintiff, during the performance of the work, delivered summary statements to the defendant on

May 17, June 6, June 22 and July 5, 1961. The plaintiff submitted a statement, dated July 14, 1961, to the defendant which showed payments of $11,000 on account and a credit of $3339.75 on prices of materials. On August 7, 1961, the defendant paid an additional $5000 leaving due a balance of $6364.57 on the plaintiff's statement. The roads and driveways on the defendant's estate are about a mile or more in length and of varying widths. The plaintiff resurfaced the roads and driveways by repairing disturbed areas, sweeping off debris and loose stone, blowing dust and dirt off the surface of the road, flowing liquid asphalt over the surface and immediately spreading three-eighths-inch native stone on the surface by brooming out evenly over the entire surface. The plaintiff could not use machinery in applying liquid asphalt and native stone because of the varying widths of the roads and driveways and because of instructions to protect the bordering lawns and plantings. The liquid asphalt was applied by the use of a hand nozzle and the native stone was spread by hand shovel and broom. The liquid asphalt was a type designated RC-3, a cutback containing naphtha as a liquid vehicle, having properties of good bonding and slow curing. The entry driveway served three residences, a large office building, theater, pool and cabana and two carriage houses, office and maintenance personnel and the residents. In October, 1961, the plaintiff performed repair work to the entry driveway at no cost to the defendant, in which was used a liquid asphalt designated as RS3-K Cationic Emulsion, having properties of rapid setting and curing. The RS3-K was applied at a curve on the entry driveway heavily trafficked by all vehicles entering the estate. The appearance of the roads was affected by the amount

of traffic on them. The defendant has not resurfaced the roads and driveways since the work was performed in 1961.

The defendant assigns error in a finding by the court without evidence that the plaintiff performed its work in a good and workmanlike manner. "It is a well-settled rule that this court will not look beyond the appendices to the briefs in order to find supporting evidence. Practice Book §§ 645, 721. 'It is the duty of both parties to print all material evidence in the appendices to their briefs.' *Pass* v. *Pass*, 152 Conn. 508, 511, 208 A.2d 753; *Cushing* v. *Salmon*, 148 Conn. 631, 632, 173 A.2d 543; *State* v. *Pundy*, 147 Conn. 7, 9, 156 A.2d 193." *Solari* v. *Seperak*, 154 Conn. 179, 183, 224 A.2d 529.

An examination of the evidence summarized in the appendices shows the following: Curtis B. Watrouse testified as an expert witness for the plaintiff that he is connected with Westfield Asphalt, is an executive of Peckham Industries Corporation, the parent company of Westfield Asphalt, and has been in business forty years. In September, 1961, at the plaintiff's request, he examined the roads on the defendant's property, and, in his opinion, the work had been performed in a workmanlike manner based on his observation of the roads. He also watched the work in the fall and observed that the work was done the way it should be done. Alton M. Springer, general manager of the defendant's estate from 1956 to 1967, a witness for the defendant, testified that he had been superintendent for a construction company in Greenwich for ten years and prior to that was in the construction business in Greenwich, and that the plaintiff's workmen who were resurfacing the roads did their work in a good and workmanlike manner.

From the foregoing, it is clear that the finding under attack is fully supported by evidence. Although there was also differing testimony by other expert witnesses as to the quality of the work done by the plaintiff and the effect on the roadways, the referee was not bound to accept their opinions. The trier may accept or reject the testimony of an expert offered by one party or the other in whole or in part. *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 348, 232 A.2d 307. It is elementary that the trier is the final judge of the credibility of the evidence and the weight to be given to it. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641.

On the facts as found and recited above, the court concluded that the defendant hired the plaintiff to perform the work on a time and material basis in accord with the plaintiff's letter, the work to be designated by the defendant. This conclusion has not been attacked. The court also reached the following conclusions which the defendant assigns as error: That the plaintiff performed such work and supplied labor, equipment and material in the amount of $25,704.32 against which the defendant paid or received credit for $19,339.75; that the plaintiff sold and delivered materials and supplied machinery and labor to the defendant in accordance with an express agreement to be paid on a time and material basis; that the plaintiff performed all the work requested and completed the contract; and that the plaintiff is entitled to a judgment of $6364.57 together with interest at 6 percent from July 14, 1961. The court's conclusions which have been attacked are to be tested by the finding. *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190. These conclusions must stand unless they are legally or logically inconsistent with the facts found or unless they involve the applica-

tion of some erroneous rule of law material to the case. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500; *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855; Maltbie, Conn. App. Proc. § 166.

The defendant's basic claim is that the trial court erred in predicating its determination of the defendant's liability to the plaintiff on an express contract requiring payment on a time and material basis rather than on one essentially sounding in quantum meruit. The defendant essentially argues that the plaintiff's complaint sounds in quantum meruit and not in express contract and, therefore, there was a material variance between the allegations in the complaint and the proof of damages offered by the plaintiff at the trial. Even assuming that the defendant is correct in his contention that the complaint is one grounded in quantum meruit, a contention we need not consider, a variance between the plaintiff's proof and its pleading would not be a material variance. Practice Book § 150; see *Strimiska* v. *Yates,* 158 Conn. 179, 183, 257 A.2d 814. The attacked conclusions must stand since they do not involve the application of an erroneous rule of law material to the case and since they are not logically inconsistent with the facts found.

The defendant assigns error in certain rulings on evidence. At the trial the defendant produced as his witness Alton M. Springer, who testified that from 1956 to 1967 he was general manager of the defendant's estate in Stamford. Before that he was superintendent of a construction company in Greenwich for ten years and prior to that was in the construction business with Chimblo Brothers, Inc., in Greenwich. The referee sustained the plaintiff's objection to the defendant's question as to Springer's opinion

of the value of the plaintiff's services to the defendant in 1961. The referee stated that the reason for excluding the question was that the plaintiff brought the suit on an agreement and not on quantum meruit. The defendant also produced as his witness John Almond, who testified that he was the defendant's accountant from 1957 to 1964 and that he was familiar with the value of the defendant's property because he was in charge of the city taxes and also knew the costs. The referee sustained the plaintiff's objection to the question asking for Almond's opinion as to how the work done by the plaintiff on the roads in 1961 affected the value of the property. Both rulings were correct in light of our earlier holding that the court correctly concluded that the plaintiff sold and delivered materials and supplied machinery and labor to the defendant in accordance with an express agreement to be paid on a time and material basis.

On cross-examination, Curtis B. Watrouse, the plaintiff's expert witness, was asked: "Well now, assuming that the stones did come loose and there was washboard and there were lumps and bumps, do you have any opinion as to what caused them?" He answered: "I don't recall seeing any lumps and bumps. I don't know what they're referring to in lumps and bumps. There were depression[s] in the surface before the job was done, and there were depressions after it was done. There were no bumps, lumps, as such. I'm not quite sure what you're referring to." He was then asked: "Let's assume that there were lumps, bumps, washboard effect, potholes, discoloration." An objection to the question was sustained. The court's reason for sustaining it was that the defendant was "getting into a field where it's of no consequence truly." The defendant

then stated that he was cross-examining an expert and expected "to show there were washboard effects, loose stones all over, potholes, loose stones." It is true that, subject to the court's discretion, in the cross-examination of an expert witness, any fact may be assumed in a hypothetical question to test the skill, learning or accuracy of the expert or to ascertain the reasonableness or expose the unreasonableness of his opinion. *Floyd* v. *Fruit Industries, Inc.*, 144 Conn. 659, 666, 136 A.2d 918; *Livingstone* v. *New Haven*, 125 Conn. 123, 127, 3 A.2d 836. Here, however, the court could justifiably have considered that an answer to the question would have shed little light on the skill, learning or accuracy of the witness and that it had no relationship to his direct testimony. It was within the proper exercise of the court's discretion to exclude the question. *Floyd* v. *Fruit Industries, Inc.*, supra, 667; *Livingstone* v. *New Haven*, supra.

One of the defendant's remaining claims of law requires some discussion. The court found that the plaintiff was entitled to interest at 6 percent on $6364.57 from July 14, 1961, the day on which the plaintiff submitted a statement to the defendant, to the date on which judgment was rendered. The defendant claims that interest properly could not be awarded since there was no finding by the court that the defendant wrongfully withheld payment. In the relief sought in its complaint, the plaintiff seeks interest. General Statutes § 37-3 provides that interest at the rate of 6 percent a year may be recovered and allowed in civil actions for the detention of money after it becomes payable. Interest ordinarily begins to run from the time when the money is due and payable. *Belisle* v. *Berkshire Ice Co.*, 98 Conn. 689, 696, 120 A. 599; *Loomis* v. *Gillett*, 75 Conn. 298,

300, 53 A. 581. "The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of any arbitrary rule." *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 A. 134. The real question in each case is whether the detention of the money is or is not wrongful under the circumstances. *Venezia* v. *Fairfield,* 118 Conn. 325, 333, 172 A. 90; *Capitol City Lumber Co.* v. *Sudarsky,* 95 Conn. 336, 341, 111 A. 349. In *Loomis* v. *Gillett,* supra, an action brought to recover the price and value of services rendered and materials furnished by the plaintiff to the defendant, we held: "Upon an action to recover damage for the nonpayment of such debt, the plaintiff is entitled to recover damage for the unlawful detention of the sum due, measured by the amount of interest thereon from the time it became due to the date of judgment." In the case at bar, the referee found that the plaintiff performed his work in a good and workmanlike manner and concluded that the plaintiff sold and delivered materials and supplied machinery and labor in accordance with an express agreement and that the plaintiff performed all the work requested by the defendant or his agents and completed the contract. Thus, it is implicit in the court's conclusions that the money due the plaintiff was wrongfully detained after July 14, 1961. On the facts of this case, we cannot hold that the referee erred in allowing interest.

The plaintiff, in its complaint, seeks $8000 damages "including interest." The defendant argues in his brief that the amount of the judgment, together with interest at 6 percent from July 14, 1961, to the date of the judgment exceeds $8000. The claim made by the defendant is that the plaintiff could recover

no greater sum than $8000 inclusive of interest and, therefore, the judgment is erroneous. Nowhere does this claim appear in the defendant's claims of law. It is raised for the first time in his brief. The defendant does not assign as error the claim that the judgment was erroneous because it exceeded the damages claimed, and, therefore, we need not consider that question. See Practice Book § 652; *Devine* v. *Warner,* 76 Conn. 229, 235, 56 A. 562.

The remaining assignments of error pursued by the defendant in his brief are without merit and warrant no discussion.

There is no error.

In this opinion the other judges concurred.