ANGELA GIANNITTI *v.* CITY OF STAMFORD
(8286)

SPALLONE, FOTI and LAVERY, Js.

Argued December 12, 1990—decision released June 18, 1991

*Kenneth B. Povodator,* assistant corporation counsel, with whom, on the brief, was *Mary E. Sommer,* corporation counsel, for the appellant (defendant).

*Stephen A. Finn,* for the appellee (plaintiff).

LAVERY, J. The defendant appeals from the judgment of the trial court awarding the plaintiff $130,000 in damages plus interest and costs after a bifurcated jury trial on liability and damages. The defendant raises

numerous claims which may be summarized as follows: first, that the trial court was incorrect in its evidentiary and discovery rulings, the cumulative effect of which denied the defendant the right to prepare a defense as to liability and damages; second, that the trial court incorrectly refused to allow the jury to view the scene of the accident; third, that the court failed to charge the jury properly as to (1) the significance of the fall area, (2) the issue of whether inadequate lighting could constitute a defect under General Statutes § 13a-149, (3) the plaintiff's duty to mitigate damages for lost earnings and loss of earning capacity, and (4) the defendant's liability for injuries caused in whole or in part by the defendant rather than those injuries caused solely by the defendant; fourth, that the court was incorrect in concluding, as a matter of law, that the plaintiff's notice to the defendant was adequate under General Statutes § 13a-149 and therefore that the court should have allowed testimony offered by the defendant that such notice was inadequate and should not have allowed the plaintiff to assert as evidence of the defendant's negligence its failure to correct the defect after receiving such notice; fifth, that the court was incorrect in awarding interest to the plaintiff based on her offer of judgment. We affirm the judgment of the trial court.

The following facts are pertinent to the resolution of this case. On October 10, 1983, at dusk, the plaintiff, a nurse, was walking on a public sidewalk in the city of Stamford. The plaintiff stepped into a depression in the sidewalk when she moved over to allow some people who were approaching her from the opposite direction to pass. The plaintiff lost her footing and fell, sustaining injuries diagnosed as a fracture in her right foot, a deep venous thrombosis in her right leg and an injured peroneal tendon. The plaintiff attempted to return to full-time work as a nurse several times after

her accident, but found herself physically unable to resume full-time responsibilities due to the excessive amount of time that she was required to stand. She was, therefore, forced to accept work as a staff nurse on a per diem, part-time basis.

On or about October 14, 1983, the plaintiff sent a letter to the defendant's city clerk to notify the defendant of her name, address, the fact that she had been injured, and the date and the approximate time and location of the injury. In that letter, the plaintiff also offered to make additional information available on request. Receipt of her letter was acknowledged by a return letter dated October 25, 1983, from the defendant's legal department. On December 22, 1983, the defendant's city clerk received another written notice prepared by the plaintiff's then attorney. Pursuant to the provisions of General Statutes § 13a-149, this second notice stated, with specificity, the injuries sustained by the plaintiff, the cause of those injuries and the time and place of the occurrence.

I

The defendant claims that the cumulative effect of a series of rulings by the trial court on evidentiary and discovery matters rendered the defendant unable to prepare an adequate defense as to liability and damages. Taken individually, each of the rulings of which the defendant complains was within the broad discretion of the court and under our limited review does not constitute an abuse of discretion.

"The action of the trial court is not to be disturbed unless it has abused its broad discretion  . . . ." *Pool* v. *Bell,* 209 Conn. 536, 541, 551 A.2d 1254 (1989). When determining whether the court has abused its discretion, we must make every reasonable presumption in favor of the correctness of the action. Id. The ultimate issue in making such a determination is "whether the

court could reasonably conclude as it did." *DiPalma* v. *Wiesen,* 163 Conn. 293, 298–99, 303 A.2d 709 (1972). A review of the transcripts makes it clear that the court could reasonably have concluded that the continued tactical maneuvering and the extended period of time during which discovery could have been, but was not, sought served only to delay the trial unreasonably. The court could also reasonably have concluded that for the sake of judicial economy and in the interests of the parties the best course would be to end discovery and to proceed directly to trial. There is no question that the defendant had ample opportunity to mount an adequate defense both in the trial on liability and in the trial on damages.

The defendant has failed to cite and we are unable to find any authority to support the proposition that a number of correct discretionary rulings when taken together would constitute an abuse of discretion. See *State* v. *Suarez,* 23 Conn. App. 705, 707 n.1, 584 A.2d 1194 (1991). If the defendant was prevented from mounting an adequate defense after having more than four years to do so, we do not conclude that it was due to the court's collective correct discretionary responses to a series of eleventh hour discovery requests.

II

The defendant next challenges the court's refusal to allow the jury to view the scene of the fall. The trial court may exercise broad discretion in deciding whether a jury should view the scene of an incident from which a controversy arose. *Tarquinio* v. *Diglio,* 175 Conn. 97, 100, 394 A.2d 198 (1978); *Meizoso* v. *Bajoros,* 12 Conn. App. 516, 519, 531 A.2d 943 (1987). In exercising its discretion, the court should determine whether viewing the scene is necessary for the jury to form a more intelligent understanding of the issues in the case and the proper applications of evidence for the resolu-

tion of those issues. *Dickson* v. *Yale University,* 141 Conn. 250, 256, 105 A.2d 463 (1954). Although discretionary, the power to authorize a view of the scene should be invoked only after the court is satisfied that the present conditions at the site are the same as those that existed on the date of the underlying incident, and that such a personal inspection is fair to both parties and "reasonably necessary to do justice." *Mackin* v. *Mackin,* 186 Conn. 185, 190, 439 A.2d 1086 (1982).

A careful review of the transcribed dialogue between the court and defense counsel regarding the defendant's motion to view the premises reveals that, despite arguments to the contrary advanced by defense counsel, the court found that the six intervening years between the date of the incident and the date of trial made it unlikely that the present conditions were the same as those in existence when the plaintiff fell. Further, the court could have reasonably concluded that there were other equally effective, if not more effective, methods available to apprise the jury of conditions existing at the scene at the time of the defendant's fall and that a trip to the site would accomplish nothing in the way of creating a more "intelligent understanding" of the issues confronting the jury. We conclude that the court did not abuse its discretion in making that determination.

### III

The defendant's third claim challenges the court's instructions to the jury. The defendant framed these issues in its request to charge on liability dated June 12, 1989, in its request to charge on damages dated June 28, 1989, and in exceptions taken immediately following the charge on damages. Thus, pursuant to Practice Book § 315,[1] these claims were preserved for our review.

---

[1] Practice Book § 315 provides: "[Requests to Charge and Exceptions]— Necessity for

"The supreme court shall not be bound to consider error as to the giving

The test of a jury charge is whether it fairly presents the case to the jury for its deliberations on the facts. *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 590, 356 A.2d 873 (1975). This must be accomplished in a manner that does not subject either party to injustice under established principles of law. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 226, 544 A.2d 623 (1988); *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 318, 541 A.2d 858 (1988). When delivering its charge to the jury, the court is bound by the overarching consideration that its comments be fair to all parties, dispassionate, proportional and avoid misplaced emphasis or omission. *Anderson & McPadden, Inc.* v. *Tunucci,* supra, 589. To meet this difficult and important task the trial court is afforded broad discretion. *Bruneau* v. *Quick,* 187 Conn. 617, 628–29, 447 A.2d 742 (1982). The court may choose whether to discuss particular items of testimony or specific facts in its charge. Although this discretion is subject to some appellate oversight, we will not disturb the trial court's jury charge unless it is demonstrated that the court's discretion has been abused to the "manifest injury of a litigant." *Geer* v. *First National Supermarkets, Inc.,* 5 Conn. App. 175, 178–79, 497 A.2d 999 (1985).

On review, we must determine whether the jury charge taken as a whole fairly presents the case to the jury in a way that prevents injustice to either party under the established rules of law. *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991).

of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

The nature and extent of a trial court's comments to the jury on the evidence must, within constitutional limitations relating to trial by jury, depend on the facts of the case at bar and the way it has been tried. *Quednau* v. *Langrish,* 144 Conn. 706, 710, 137 A.2d 544 (1957). The trial judge, not the reviewing court, enjoys the best vantage to sense the atmosphere of the trial and to assess what impact certain remarks will have on the jury. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 322, 430 A.2d 1 (1980); *Geer* v. *First National Supermarkets, Inc.,* supra.

After reviewing the court's charges to the jury on liability and damages, we are unpersuaded that they were manifestly unjust to the defendant. The court meticulously fashioned the instructions to highlight the pertinent facts of the case and to give the jury guidance on the applicable law. The charges, when taken as a whole, were complete, balanced and unbiased. They afforded the jury a clear and understandable view of the task before it and provided the tools with which to meet that task. The charges requested by the defendant, which the court properly refused to give, would have served only to place undue emphasis on arguments fully presented by the defendant at trial, and would have intruded on the jury's exclusive province as factfinder. The trial court's refusal to render the charges requested by the defendant was correct and did not constitute an abuse of discretion. Finally, no interrogatories were requested, a general verdict was rendered, and we must presume that every issue was found in favor of the plaintiff. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 202, 520 A.2d 208 (1987).

IV

The defendant's fourth claim challenges the trial court's conclusion as a matter of law that notice of the

plaintiff's injury tendered to the defendant was adequate in light of the saving clause contained in General Statutes § 13a-149.[2]

General Statutes § 13a-149 requires that before a plaintiff may sue a municipality for damages for injuries suffered as a result of that municipality's failure to maintain its roads properly, that plaintiff must, within ninety days of the occurrence, provide written notice of the occurrence to a selectman or clerk of the municipality. Section 13a-149 also contains a saving clause that provides that notice given under the statute will not be invalidated because of inaccuracies in its content as long as there was no intent to mislead the municipality or the municipality is not in fact misled.

The transcript discloses that during discussion with the trial court on this issue the defendant conceded that the plaintiff did not intend to mislead it. Nevertheless, the defendant argues that before notice can be deemed to be adequate, the jury must also decide that the municipality was not misled.

The defendant is asking us to determine that the word "or" in the statute should be read in the conjunc-

---

[2] General Statutes § 13a-149 provides: "DAMAGES FOR INJURIES BY MEANS OF DEFECTIVE ROADS AND BRIDGES. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

tive as "and" rather than in the disjunctive as "or." The defendant has supplied us with no precedent that would support this interpretation of the disjunctive "or" in the absence of a showing of clear legislative intent to do so.

In *Shapiro* v. *Hartford,* 4 Conn. App. 315, 317–18, 494 A.2d 590, cert. denied, 197 Conn. 810, 499 A.2d 61 (1985), we applied the word "or," as it is used in the saving clause of § 13a-149, to allow for it to be read in the disjunctive requiring proof of either the intent to mislead *or* the fact that the city was misled. It is well settled that when interpreting a statute we are limited to the intention expressed in the words used by the legislature. *Luttrell* v. *Luttrell,* 184 Conn. 307, 310, 439 A.2d 981 (1981); *Lukas* v. *New Haven,* 184 Conn. 205, 212–13, 439 A.2d 949 (1981); *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978). Where the language used by the legislature is clear and unambiguous, we are not at liberty to read into a statute, by construction, a provision that is not clearly stated. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 602–603, 539 A.2d 101 (1988); In this case, the statute is clear in its use of the word "or." When the defendant's counsel conceded that any flaw in the notice was not made with the intent to mislead, it was he and not the court who removed the issue from the case and allowed the notice to be saved because it met one of the requirements of the saving clause.

## V

The defendant's fifth claim is that it has no liability for the prejudgment interest awarded by the court pursuant to an offer of judgment filed by the plaintiff. The specific facts pertinent to this issue are set forth below. The plaintiff filed her complaint on January 25, 1985. On August 6, 1985, pursuant to General Statutes

§ 52-192a,[3] the plaintiff filed an offer of judgment in the amount of $57,500. The offer was rejected by the defendant. On June 29, 1989, after trial, the jury rendered a verdict in favor of the plaintiff awarding her $130,000 in damages. On July 11, 1989, the trial court, *Lewis, J.,* denied the defendant's motions to set aside the jury's verdicts on liability and damages.

---

[3] General Statutes § 52-192a provides: "OFFER OF JUDGMENT BY PLAINTIFF. ACCEPTANCE BY DEFENDANT. COMPUTATION OF INTEREST. (a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment,' the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment.' Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

Because the offer of judgment was filed within eighteen months of the filing of the original complaint, the prejudgment interest of 12 percent on the $130,000 jury award was calculated from the date the plaintiff filed the original complaint to the date of the court's denial of the defendant's motion to set aside the jury's verdict as required by General Statutes § 52-192a. Accordingly, the court awarded the plaintiff $69,766.60 in prejudgment interest. The court also awarded costs to the plaintiff in the amount of $7246.84. The defendant claims that prejudgment interest should not be taxed against it because it is a municipality and is protected from such a judgment by its governmental immunity. We cannot agree.

The defendant relies on the decision in *Struckman* v. *Burns,* 205 Conn. 542, 534 A.2d 888 (1987), as the basis for its argument that a municipality should not be liable for prejudgment interest. In *Struckman,* our Supreme Court concluded that because the sovereign immunity enjoyed by the state may be abrogated only by clear and unambiguous statutory language, the fact that § 13a-144[4] was silent as to the taxing of interest on damages awarded on claims against the state precluded the availability of such an award. *Struckman* v. *Burns,* supra, 558–59. The defendant contends that, like the state, a municipality is immune from the imposition of prejudgment interest and, in the absence of clear statutory language to the contrary, is exempt from the court's imposition of prejudgment interest. We disagree.

The governmental immunity afforded a municipality and the sovereign immunity enjoyed by the state are different in historical origin, scope and application.

[4] General Statutes § 13a-144, unlike § 13a-149, abrogates the sovereign immunity of the state and allows suit for injuries sustained as a result of the state's failure to maintain highways, bridges and sidewalks.

W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts § 131, p. 1051. Sovereign immunity from tort liability originates from the early feudal concept that the king can do no wrong. *Bergner* v. *State,* 144 Conn. 282, 285, 130 A.2d 293 (1957); 57 Am. Jur. 2d, Municipal, Etc., Tort Liability § 2. The recognition that this concept should apply to the states has been woven into the fabric of the United States constitution and our case law. See, e.g., U.S. Const., amend XI; *Bergner* v. *State,* supra. Today, it is axiomatic that in the absence of a statute specifically waiving the state's immunity and granting permission to sue, the state is protected from liability by its sovereign status. *Struckman* v. *Burns,* supra, 558; *Murphy* v. *Ives,* 151 Conn. 259, 262–63, 196 A.2d 596 (1963).

Municipal immunity is generally described as a court made rule and has its origins in the case of *Russell* v. *Men of Devon,* 100 Eng. Rep. 359 (1788). Although municipalities enjoy some limited governmental immunity from liability, they have no sovereign immunity and may therefore sue and be sued as any other natural person, corporation or other entity. *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984); *Murphy* v. *Ives,* supra, 264.

Our decision in *Fukelman* v. *Middletown,* 4 Conn. App. 30, 492 A.2d 214 (1985), supports this limitation on municipal immunity as it applies to a municipality's liability for costs in suits brought under § 13a-149. In *Fukelman,* we held that even though § 13a-149 does not specifically allow for the imposition of costs, a municipality does not enjoy sovereign immunity, and costs may therefore be taxed against it under General Statutes § 52-257.[5]

---

[5] General Statutes § 52-257 provides for the allocation of fees and costs in civil actions.

As early as 1672, prior to the introduction of the concept of municipal immunity, the General Court of Assemblies of the Connecticut Colony enacted a statute requiring Connecticut towns to construct and maintain roads and bridges.[6] That statute imposed liability on towns for injuries to people and property resulting from the failure sufficiently to maintain its thoroughfares.

This early statute is the direct antecedent to General Statutes § 13a-149. It is clear from the language of the original statute and its subsequent versions that it was the intent of the lawmakers to impress the various municipalities with their statutory duty. Toward that end, a provision allowing recovery of double damages was at one time included as compensation for loss of life or limb resulting from the town's breach of its duty. The Laws of Connecticut Colony 1672, Caleb Stanley copy p. 7, printed by Samuel Green, Cambridge (1673).

---

[6] "This Court considering the great danger that persons Horses and Teams are Exposed unto, by reason of defective Bridges, and County Highwayes in this Jurisdiction; Do Order; That if any person of any time loose his Life through defect or insufficiency of such Bridges, in passing any such Bridge or High-way after due warning given unto any of the Selectmen of the Town in which such defect is, in writing under the hand of two witnesses, or upon presentment to the County Court of such defective Wayes or Bridges, that then the County or Town which ought to secure such wayes or Bridges, shall pay a fine of *one hundred pounds* to the Parents, Husband, Wife, or Children, or next of Kin to the party deceased. And if any person loose a Limb, break a Bone, or receive any other Bruise, or breach in any part of his body through such defect aforesaid, the County or Town through whose neglect such hurt is done shall pay to the party so hurt Double Damage; the like satisfaction shall be made for any Team, Cart or Cartage Horse or other Beast, or loading proportionable to the Damage sustained aforesaid.

"It is also Ordered; That the several Townships within this Colony shall keep in sufficient repair all the High-wayes and Bridges within their Townships . . . ." The Laws of Connecticut Colony 1672, Caleb Stanley copy p. 7, printed by Samuel Green, Cambridge (1673).

It is notable that our modern statute defining the municipal duty to maintain roads has been expanded to allow an injured person to recover damages from *any party* bound to maintain a road or bridge. See General Statutes § 13a-149. Although municipalities are mentioned separately in the statute, it is for the sole purpose of allowing the municipality adequate notice to assess any potential claims against it. The fact that there is a separate statute abrogating the state's sovereign immunity supplies us with evidence of the legislative intent to place municipalities in a position different from that enjoyed by the state. Further, because § 13a-149 treats municipalities the same as any other party that is bound to maintain thoroughfares, we conclude that there is no shield of governmental immunity to be extended to municipalities with regard to this function.

The plaintiff brought her revised complaint pursuant to General Statutes § 13a-149, which specifically abrogates any common law governmental immunity afforded municipalities in such actions and does not limit the amount of an award that may be recovered against the municipality. *Ryszkiewicz* v. *New Britain,* supra.

Finally, our case law clearly supports the notion that prejudgment interest may be awarded as part of damages assessed against a municipality just as it would be against any private party defendant. *Venezia* v. *Fairfield,* 118 Conn. 325, 333, 172 A. 90 (1934); *Southern New England Ice Co.* v. *West Hartford,* 114 Conn. 496, 159 A. 470 (1932); *Blake* v. *Waterbury,* 105 Conn. 482, 136 A. 95 (1927); *Brown* v. *Southbury,* 53 Conn. 212, 1 A. 819 (1885); see also 57 Am. Jur. 2d, supra, § 679. The defendant does not cite and our research has not uncovered any case in which a municipality was held to be immune from the imposition of interest after its liability for damages has been decided

by the factfinder. We conclude, therefore, that the assessment of interest against the defendant was proper and correct under the provisions of General Statutes § 52a-192a.

The judgment is affirmed.

In this opinion the other judges concurred.