[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO CORRECT OR MODIFY AWARD AND FOR ORDER TO SHOW CAUSE
By this application, the plaintiff raises the following issues:
1) Whether the arbitration award, granted to the plaintiff by the arbitration panel, should be offset by the amounts awarded to another injured passenger and an injured tortfeasor.
2) Whether the court should grant the plaintiff's request for statutory interest from the date of the arbitration award.
Pursuant to Conn. Gen. Stat. 52-419, the plaintiff, Tammy B. Stephan ("Stephan"), seeks to modify or correct the arbitration award of $250,000.00, such that $71,500.00, the amount offset by the arbitration panel for amounts paid to other injured victims, is added back to plaintiff's award for a total corrected award of $321,500.00. The plaintiff also seeks statutory interest pursuant to 37-3a. Pursuant to Conn. Gen. Stat. 52-417, the defendant, Phoenix General Insurance Co. ("Phoenix"), seeks to confirm the arbitration award.
On October 7, 1987, the plaintiff, while riding in an automobile owned by her, sustained personal injuries in an automobile accident. Both the driver of her vehicle and the operator of another motor vehicle, Lila Simpson ("Simpson"), were negligent. Simpson was insured at the time of the collision with Colonial Penn Insurance Company ("Colonial") with a policy containing liability limits of $100,000.00/$300,000.00. The plaintiff was insured with General Accident ("Pennsylvania General"), with a $100,000.00 single limit policy.
The plaintiff made a claim for damages against Simpson and CT Page 9988 the operator of her own motor vehicle. Simpson also made a claim against the operator of the plaintiff's vehicle. The plaintiff received $100,000.00 from Colonial in exchange for a release of Simpson, exhausting the proceeds available to her from that policy.
The single limit policy insuring the Stephan vehicle was divided between the plaintiff, Simpson and another passenger in the plaintiff's vehicle. The $100,000.00 limit for that policy was, therefore, exhausted. The plaintiff received $28,500.00 as her portion of the proceeds. The plaintiff thereafter made a claim for underinsured motorist (UM) benefits.
At the time of the accident, the plaintiff's automobile insurance policy insured two cars with $100,000.00 in UM benefits applicable to each vehicle. Additionally, as a resident of her parents' household, the plaintiff was entitled to UM benefits provided by her parents' insurance policy. At the time, her parents were insured through Phoenix, having two vehicles covered by a policy with $300,000.00 UM coverage applicable to each.
The parties stipulated to the following:
1) Liability was not an issue.
2) All underlying insurance had been exhausted.
3) The Basic Reparations Benefits had been repaid.
4) There was no collateral source issue.
 5) Whatever the coverage was found to be, it would be prorated between the Phoenix and Pennsylvania General.
After a hearing, the arbitration panel made the following determinations:
 1) The plaintiff suffered total damages of $450,000.00.
 2) Phoenix provided UM coverage in the aggregate amount of $600,000.00.
 3) Pennsylvania General provided an aggregate of $200,000.00 UM coverage.
 4) There was a total of $800,000.00 of available UM coverage.
5) The plaintiff received $128,500.00, CT Page 9989 $100,000.00 of which came from Simpson's insurer and $28,500.00 from Pennsylvania General, the plaintiff's insurer.
 6) The $71,500.00 balance of the Pennsylvania General policy was paid to other claimants on that policy thereby exhausting the liability limit of said policy.
 7) The $450,000.00 in damages should be offset by the $71,500.00 paid to other claimants and the $128,500.00 paid to the plaintiff for a total of $200,000.00 in credits.
 8) The net award after total credits were deducted was $250,000.00.
In the above award, all arbitrators, except the neutral, agreed. The majority concluded that the $200,000.00 offset was correct in lieu of the holding in American Motorists v. Gould,213 Conn. 625, 569 A.2d 1105 (1990). The majority concluded that could permits the entire payment made by the underlying liability carrier to be a credit to be deducted from the claimant's award. The neutral arbitrator dissented contending that "it was neither fair, just, nor reasonable to assess the claimant for a benefit which she did not receive." (See plaintiff's Exhibit C). Scope of Review for Compulsory Arbitration
"Ordinarily, arbitration is a creature of contract whereby the parties themselves, by agreement, define the powers of the arbitrators." American Universal v. DelGreco, 205 Conn. 178, 185,530 A.2d 171 (1987). "Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrator through their submission, then the scope of judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statutes Section 52-418." Id. "Under an unrestricted submission, [however,] the arbitrators' decision is considered final and binding; thus the courts will not review evidence considered by the arbitrators nor will they review the award for errors of law or fact." Id. at 186.
"Such is not the case with statutorily mandated or compulsory arbitration." Id. at 187. "[V]oluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural due process." Id. Compulsory arbitration calls for a higher standard of judicial review. Id. at 188. CT Page 9990
Conn. Cen. Stat. 38-175c(a)(1)(B) provides in relevant part that "[e]very . . . [liability] policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." "[W]here judicial review of compulsory arbitration proceedings required by 38-175c (a)(1) is undertaken under General Statutes 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." DelGreco, supra, 191; See Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 655 n. 11, 591 A.2d 101 (1991).
Scope of Review for Awarding Statutory Interest
"[A] trial court has discretion, under General Statutes37-3a, to award prejudgment interest on an arbitration award retroactively to some date prior to the date of the trial court's judgment affirming the award." Chmielewski, supra, 675-76. (citations omitted). Implicit in that determination is the conclusion that the prior date may be the date of the arbitration award. The relevant question under 37-3a is whether the money was wrongfully withheld, and the ultimate determination "`is one to be made in view of the demands of justice rather than through the application of any arbitrary rule.'" Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 702, 590 A.2d 957 (1991) (quoting Cecio Bros., Inc. v. Feldman, 161 Conn. 265, 275,287 A.2d 374 (1971)). The trial court's award of interest will not be overruled absent a clear abuse of discretion. Metcalfe v. Talarski, 213 Conn. 145, 160, 567 A.2d 1148 (1989).
The plaintiff, citing Gould, seeks to correct or modify the arbitration panel's award on the grounds that the reduction of the award by the $71,500.00 paid to the other injured persons is inconsistent with the statutory intent to permit the injured party to recover the amount (s)he would have received had the tortfeasor been insured to the same extent as the injured party. The plaintiff further contends that Gould is not controlling in this case because the sole issue reached in Gould was whether the tortfeasor was "underinsured" as the term is defined by General Statutes 38-175c(b)(2) and not whether the UM coverage carrier was entitled to a set-off equal to the sums paid to the other victims. The defendant, citing Gould, argues that the UM carrier is entitled to a credit or reduction of damages in the full amount paid out under the applicable liability policies rather than only that amount of the liability policy payment made to the claimant. The defendant, therefore, maintains that the arbitration panel correctly reduced the plaintiff's award by $200,000.00 rather than $128,500.00 because the former amount includes the total paid to all the victims in this case. CT Page 9991
Amount Allowable As An Off-Set
In Gould, although it was held that the claimant was not eligible for underinsured coverage, the court went on to state in dicta that "all sums" paid out by virtue of the tortfeasor's liability coverage included payments made to other injured passengers. supra, 637. The court reasoned that an insurance policy provision which reduced uninsured motorist limits by payments made in behalf of the tortfeasor, specifically including "all sums" paid under the liability portion of the policy, was "not affected by the provision [Section 38-175a-6 (d)(3) of the Regulations of Connecticut State Agencies] reducing liability limits by amounts paid as uninsured motorist insurance." Id. In support of their decision, the court noted that the above regulation did not "specifically address whether the "reduction of limits" by virtue of payments made in settlement of a liability claim refers to the total paid to all victims of the accident or only to the amount paid each victim." Id. at 636. Section 38-175a-6 (d)(3) of the regulations provides for the reduction of limits to the extent that damages have been:
 paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment.
(emphasis added). The court went on to hold that because the provision reducing uninsured motorist limits by sums paid as liability insurance was clear and not affected by the provision reducing liability limits by amounts paid as uninsured motorist insurance, the principle that ambiguities in a policy should be resolved in favor of an insured was not appropriate. supra, 637.
In the case at hand, the "Limit of Liability" provisions of the insured's uninsured motorist coverage (See Plaintiff's Exhibit B, p. 6) includes language of limitation similar to regulation 38-175a-6 (d)(3) and the language of the policy at issue in Gould. The second paragraph of the "Limit of Liability" portion of the plaintiff's UM coverage provides that "[a]ny amounts otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." (emphasis added). The third paragraph provides that "[a]ny payment under this CT Page 9992 coverage will reduce any amount that person is entitled to recover for the same damages under Part A."
Because regulation 38-175a-6 (d)(3) does not specify in what manner payments made to victims will reduce the amount payable by the UM carrier to the insured, and the language of the insured's policy reducing uninsured motorist limits by all sums paid as liability insurance is clear and in compliance with the above regulation, the $71,500.00 paid to the insured passenger and Simpson was properly deducted from the plaintiff's award as payments made "by on or behalf of any person responsible for the accident." DelGreco, supra, 197.
"The automobile liability insurance business is one which is extensively regulated . . . and judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state." Roy v. Centennial Ins. Co., 171 Conn. 463, 473, 370 A.2d 1011
(1976). "Those repercussions are to be avoided in the absence of a clear legislative intent to revise the existing regulations and statutes." Dugas v. Lumbermans Mutual Casualty Co., 217 Conn. 631,647, 587 A.2d 415 (1991).
Based on the foregoing, the defendant's application to confirm is granted.
Further, the court will exercise its discretion to award interest from the date of the arbitration award to the date of this judgment at the rate provided by Connecticut General Statutes, 37-3a.
Barry R. Schaller, Judge