[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action of the plaintiffs, architects, against the defendant, a real estate developer.
In October 1988 the defendant contacted the plaintiff, requesting that the plaintiff perform architectural services in connection with a 100 Unit Affordable Housing Complex which the defendant planned to construct between Maple Avenue and Dalton Street in Hartford, Connecticut.
The plaintiff submitted to the defendant two written proposals, one by letter of October 20, 1988 and one by proposed printed contract form dated May 4, 1989 proposing to do the complete Architectural Services for the amount of $148,700, with deletions for work to be done by others (October 20, 1988). The proposal of May 1989 was in the amount of $153,200. The difference between the two proposals is not material. Both proposals excluded the cost of "furnishing existing topography maps and A-2 boundary Surveys for the Architects use." If requested by the owner the Architect would prepare the topography maps and the A-2 Boundary Survey "for an amount not to exceed $10,000", in addition to the proposed contract price.
The proposals were for complete Architectural Services, including Civil, Structural, Mechanical, Electrical and plumbing. The proposals would cover Basic Services, Design Development Phase, Construction Phase, Environmental Reports and attendance at one public hearing. The proposals set hourly rates for work if required beyond the scope of the proposals.
Neither of the written proposals were signed by the defendant. The parties ultimately determined to proceed on a different basis. However failure to execute a written agreement is not material in light of subsequent events. The plaintiff does not bring this action on the basis of breach of a written contract.
The parties kept in contact after the October 1988 discussions. In April on early May 1989 the defendant CT Page 10837 contacted the plaintiff with an urgent message. There was a building moratorium proposed to go into effect at the end of June. It was absolutely essential that the architectural plans work commence immediately and be completed by the end of June to "beat the deadline"
The plaintiff commenced the work immediately. The plaintiff sent to the defendant a comprehensive proposed contract for all disciplines and commenced the work immediately due to the urgent time constraints. The comprehensive contract proposal never came to fruition. The plaintiff was informed that the financing from the state agency CHFA was in place. Properly, the plaintiff does not claim any compensation for work done by other disciplines.
The plaintiff took all seven people in his office off other work that they were doing, and gave this project one hundred percent of their time for six weeks straight. 70 sheets of design drawings and about 300 pages of specification were required.
The structural engineering was done by Hallisy Engineers, mechanical plumbing and fire protection by Janazzo and the electrical engineering by someone else, all under direct choice of contractors and through separate agreements between the defendant and these other contractors.
The Strauss Engineering Company did the A-2 survey and the necessary Civil Engineering work of designing site plans drainage, grading and everything required for the engineering design of the job. The plaintiff suggested Mr. Strauss for the civil engineering work. That had to be done to meet the deadline, and Mr. Strauss was available and had the ability to do the work.
The original proposal had changed due to the time urgency. Rather than to provide all of the disciplines to accomplish the project as originally proposed, the plaintiff's limited scope was for architectural design only and coordinating the efforts of the all of the other outside professionals to "bring the package together in a very short period of time for the building permits"
The billing was on a straight hourly basis, taken from the time cards of the plaintiff and his employees. The CT Page 10838 billing is not on a percentage basis, and is about half of what it would have been if on a percentage basis. It is eminently reasonable.
The defendant states, as concerns the plaintiff's work, that "they did a marvelous job and worked with the contractor and myself and many others to put together the application, and we submitted the building permit application with all the appropriate documents and received the building permit".
The plaintiff's bill for services was $59,790.53. The defendant paid the plaintiff $7,500.00 on February 26, 1991. The defendant informed the plaintiff that whether this job or some other job goes through he will pay the plaintiff when the money becomes available.
The defendant cannot seriously contest that the plaintiff, even absent a specific written contract, is entitled to be paid the reasonable value of his services. The defendant entered into an oral contract with the plaintiff that the plaintiff provide services. See Pagani v. Corneal,13 Conn. App. 468, 471. The plaintiff performed those services and is entitled to be paid the reasonable value thereof. Pagani v. Corneal, supra, P. 472. Whether such payment be based upon the theory of a unilateral contract requiring payment for the reasonable value of services, or upon the theory of quantum meruit is immaterial. See Cecio Bros., Inc. v. Feldman, 161 Conn. 265, 272; Pagani v. Corneal, supra 468.
The reason given for non-payment by the defendant is that the financing upon which it relied, from CHFA, failed to come to fruition. The building permit was issued by the Building Inspector. Intense citizen opposition was generated as concerns this project. An appeal was taken to the Zoning Board of Appeals. The Board sustained the appeal. The defendant appealed to the Superior Court. On February 26, 1992 the Superior Court, Schimelman, J. sustained the defendant's appeal. (Docket No. CV89-0368906S). By that time the tax credit advantage of CHFA financing was no longer available, having expired at the end of 1991. The defendant testified that "without the tax credit, the financing would not work." The defendant attempted to sue the city of Hartford and/or the individual members of the Zoning Board of Appeals for damages. That suit was dismissed, based upon CT Page 10839 governmental immunity.
The defendant pleads, as a special defense, that the agreement between the plaintiff and the defendant was "contingent upon the defendant's ability to obtain financing for said project" and that "since said oral contingency agreement failed as a result of (failure of) the contingency to occur said agreement is null and void and of no force or effect."
The evidence is contrary to the position taken by the defendant. The defendant in October 1988 discussed with the plaintiff the fact that he did not have the funding at that time. The plaintiff informed the defendant that the plaintiff "would not work on the basis of the job being funded. We have to be paid for what we do . . . we don't work on the basis that we'll get paid if the job goes" The plaintiff proposed, in its letter of 20 October, that the plaintiff would bill monthly, and if the owner chooses to defer payment the plaintiff would be paid an additional amount of $1,400 per month, and that the defendant would not be entitled to defer payment of accrued fees beyond 9 months from the execution of the Contract for Services.
Although this term never became a part of a written contract, as the defendant did not sign the proposed contract, it, together with the plaintiff's emphatic testimony, including his statement concerning contingent payment that "that would be suicidal for us to do it . . . We've never done that" is totally persuasive that the plaintiff never agreed that his fees be contingent upon the defendant's obtaining financing.
The court finds that there was no agreement by the parties, at any time, that the plaintiff's fees were contingent upon the defendant's obtaining financing.
The court finds that the plaintiff's proposal of October 1988 to charge "monthly charges" or interest on its fees was not agreed to by the defendant and is not an entitlement due and owing to the plaintiff.
The amount owed to the plaintiff for the work performed was $59,790.53. The defendant paid $7,500.00. The balance owing is $52,290.53. CT Page 10840
The court does not award pre-judgment interest. The court takes into consideration the fact that the plaintiff knew that the defendant was optimistically relying upon the CHFA funds, that the defendant had received the CHFA commitment, although some delay in payment could be expected; that the defendant has made a concerted effort through appropriate litigation to secure funds to pay the plaintiff, and that the defendant's contentions in this litigation were not advanced frivolously. The court finds that there was neither "bad faith or wrongdoing" on the part of the defendant such as to warrant pre-judgment interest. See O'Hara v. State, 218 Conn. 628, 644, Cecio Bros. Inc. v. Feldman,161 Conn. 265, 275.
The court enters judgment for the plaintiff in the amount of $52,290.53.
L. Paul Sullivan, J.