[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE THE VERDICT
The present action arises out of a motor vehicle accident which occurred in July of 1986 in which Salvatore Guliuzza ("the plaintiff"), who was then a minor, sustained personal injuries. Excluding jury selection, the case consumed twenty-one days of trial and involved testimony by some twenty-seven witnesses. The jury returned a verdict in favor of the plaintiff in the amount of $1,880,000 as well as a verdict in favor of his mother, Maryann Guliuzza, in the amount of $10,000. The verdict in favor of the mother is not involved in the present motion.
The plaintiff was a passenger on a bus going to the zoo in New York when the bus struck the rear of a truck parked on the highway and the action was instituted against the owner and operator of the bus. The plaintiff claims that he struck his head on the seat in front of him and again when he fell to the floor. The plaintiff presented evidence to establish that as a result of the motor vehicle accident he sustained a CT Page 10543 closed head injury, brain damage, posttraumatic epilepsy, loss of cognitive functions, and loss of adaptive functions. Plaintiff also presented evidence that he would incur loss of income in the future, would incur medical bills throughout the rest of his life, and was in need, at the time of trial, of assisted living support, and would need such support for the remainder of his life. The plaintiff also admits that prior to the accident he was suffering from an attention deficit disorder and hyperactivity.
Although the defendants admitted responsibility for the accident, they presented evidence that the plaintiff, who went to the hospital emergency room the day after the accident, did not complain at that time of head injury which is contrary to the assertions of the plaintiff; that the plaintiff did not receive a closed head injury; that the plaintiff did not, and could not, suffer posttraumatic epilepsy of the type claimed as a result of the accident; and that any impairment of the plaintiff existing at the time of trial was caused by factors in his background which pre-dated the accident.
The defendants have moved to set aside the verdict in favor of the plaintiff and assert numerous grounds as a basis for their motion. Additional facts, as may be pertinent, are hereinafter set forth in relation to the respective claims made by the defendants.
The defendants claim that the testimony of the Plaintiff's economic expert, Dr. Gary Crakes (hereinafter Professor Crakes) should have been precluded. The issue relating to the testimony of an economics expert first arose during the testimony of Dr. Schuster, a neuro-psychologist and rehabilitation expert retained by the plaintiff. The plaintiff sought to elicit testimony from Dr. Schuster with respect to the present value of certain expenses that would be incurred by the plaintiff over his life time based upon the assumption that the amount of interest money would earn and the inflation rate would be approximately the same so that the present value of such payments would simply be the yearly payment at the present time multiplied by the number of years those expenses would be incurred. The defendants objected to such testimony on the grounds that Dr. Schuster was not qualified to express opinions with respect to a comparison of future inflation and interest rates. The CT Page 10544 objection was sustained by the Court.
The plaintiff then indicated that he would call as a witness, Professor Crakes, whom the plaintiff had disclosed as an economic expert pursuant to Practice Book § 220D. The defendants objected to the production of testimony by Professor Crakes asserting that approximately a year before the trial, in 1993, the defendants' office contacted Professor Crakes's office and was advised that they did not have a file involving the present plaintiff. The defendants, therefore, did not undertake the deposition of Professor Crakes and the plaintiff did not list Professor Crakes as a potential witness during jury selection.
It appeared that counsel for the plaintiff had contacted Professor Crakes prior to the trial and determined that he was available to testify and established the rates that would be charged for such testimony. Plaintiff's counsel was also aware of the nature of Dr. Crakes testimony from prior experience. Of particular significance, is the fact that there was never any conversation between the attorneys for the plaintiff and the attorneys for the defendants in which the plaintiff's attorney indicated that he would not call Professor Crakes as a witness.
Based upon the foregoing, the Court: allowed Dr. Schuster to testify subject to later connection; allowed plaintiffs to produce Dr. Crakes as a witness provided that the defendant would be supplied with information relating to the nature of the testimony and that the defendants also have the opportunity to take a discovery deposition; and further provided that the defendant be allowed an opportunity to obtain his own economics expert, and consult with that expert prior to taking the discovery deposition of Professor Crakes. Professor Crakes did testify by way of deposition and the defendant did obtain the services of Professor Dresch, an economics expert, who also testified in person.
The defendant assigns as error the ruling of the Court in allowing Professor Crakes to testify. It also appears that the attorneys for the plaintiff believed that the Court would allow Dr. Schuster to testify with respect to the appropriate discount rate and, therefore, the testimony of an economics expert would be unnecessary. The attorney for the defendant, on the other hand, believed that the Court would CT Page 10545 not allow the testimony of Dr. Schuster with respect to the appropriate discount rate. The Court attached particular significance to the fact that Professor Crakes was identified, on numerous occasions, as a witness and there were no conversations between the respective attorneys in which the attorneys for the plaintiff indicated that they would not call him as a witness. The Court does not believe that there was any intention to deceive either the defendants' counsel or the Court and, thus, the situation is not the same as presented in some cases where testimony of a potential witness has been denied or curtailed.
The Court therefore believes that the rulings constituted an exercise discretion by the court under the rule of such cases as Sturdivant vs. Yale New Haven Hospital,2 Conn. App. 103 (1984), and does not require the setting aside of the verdict in favor of the plaintiff.
The defendant also claims error in allowance, by the Court, of certain questions posed to Sharon Brangaccio, the plaintiff's third grade teacher, who was called as a witness by the plaintiff. The defendants claim that certain evidence was admitted which constituted expert testimony when Ms. Brangaccio was not disclosed as an expert. The defendants designate five areas in which they claim error occurred. A review of the transcript indicates some questions were objected to on the basis of foundation and others on varied grounds including the failure to designate the witness as an expert. A view of the transcript, however, also indicates that for the most part the witness was asked to read test results from documents that were already in evidence. On occasions she also compared the results in various tests. The test scores had been the subject of extensive testimony, from both parties, and numerous expert witnesses expressed their opinions with respect to the results and the interpretation and meaning of the results. The primary thrust of Ms. Brangaccio's testimony involved the condition of the plaintiff at the time he was her student. Other limited responses made by the witness do not require the jury verdicts to be set aside.
The defendant also assigns as error the admission of the testimony by Professor Crakes regarding economic projections as to the cost of support care needed by the plaintiff over certain periods of time. The plaintiff presented evidence, CT Page 10546 through other witnesses, that the plaintiff's condition was such that he needed support care at the present time at the cost of $39,600 per year. The plaintiff's mother also testified that she intended to provide that support care for him as long as she was able to do so. The plaintiff's mother's age was forty-three at the time of trial. Professor Crakes testified with respect to economic projections concerning support care commencing in one year, twelve years, and twenty-two years. The defendants claim error in the admission of such evidence on the grounds that there was no foundation in the evidence that the plaintiff would, or could reasonably be anticipated, to require such care at any particular time in the future.
In the absence of the testimony of the plaintiff's mother, the plaintiff would be entitled to present economic projections for the cost of support care dating from the time of trial. However, the fact that the plaintiff's mother testified that she would provide those services, free of charge, does not disentitle the plaintiff to damages nor does it disentitle the plaintiff from presenting evidence which the jury might find relevant to that issue. While it is true that there is no evidence that the plaintiff would require support care beginning in twenty-two years or in twelve years, or in one year, plaintiff was entitled to present evidence for the jury to utilize, in their best judgment, as to losses that might reasonably be incurred as a result of the need for support care.
The defendant also claims error in the failure of the Court to charge that an adverse inference might be drawn because of the failure of the plaintiff to produce as witnesses certain known available individuals. SeeSeccondino [Secondino] v. New Haven Gas Co.,147 Conn. 672 (1960) and its progeny. The witnesses who were not called by the plaintiffs involved three separate classes of individuals. The first class is the plaintiff's teachers from the fourth through the seventh grades who were employed in the Derby school system and available to testify; the second class involved Dr. Silverberg, the plaintiff's pediatrician, who first diagnosed the plaintiff's attention deficit disorder, who practiced in Ansonia and was available to testify; the third class involved the failure to call Mr. Kutyka, who is the grandfather of the plaintiff, and who was present in the defendant's bus at CT Page 10547 the time of the accident sitting two rows behind the plaintiff.
The plaintiff claimed that at an early age he was diagnosed with an attention deficit disorder and hyperactivity. Many years later, he was involved in the subject motor vehicle accident which the plaintiff claims caused the injuries. It was the defendants, and not the plaintiff, who asserted that the condition of the plaintiff prior to the accident explained his current condition and his current behavior. Given such a state of facts, the Court does not consider the fourth through seventh grade teachers as being individuals who would naturally be produced by the plaintiff by reason of their relationship with him or who could reasonably be expected to have peculiar or superior information material to the case.
The same situation exists with respect to Dr. Silverberg who diagnosed the attention deficit disorder many years prior to the accident. It was the plaintiff's claim that the conditions from which he suffered prior to the accident did not explain his conduct after the accident and that it was the accident that caused the injuries of which the plaintiff complains. Accordingly, the Court does not consider Dr. Silverberg to be an indivdual [individual] who was within the rule relating to adverse inferences.
The plaintiff's grandfather Mr. Kutyka, was seated in the bus two rows behind the plaintiff. There is no indication that Mr. Kutyka was in a position to see, or did see, what happened to the plaintiff as a result of the collision with the truck. The plaintiff's mother did testify that after the accident the passengers in the bus were taken to a garage in New York and were subsequently picked up by a bus and returned to Connecticut. She testified that during this period of time the plaintiff was complaining of pains in the head. Liability was admitted by the defendant and there is no indication that Mr. Kutyka was in a position to see what happened to the plaintiff as a result of the collision. However, he was present while the family was in the garage waiting to be taken home and was present during the ride home. He therefore, might have supplied to corroborative evidence with respect to the plaintiff's claim that he was complaining of head pain during that period of time. However, the only evidence concerning the "availability" of Mr. Kutyka was the fact the he lived in Ansonia. There was CT Page 10548 no evidence as to his present whereabouts, his state of health or other factors that might be such as to make him "available" to testify. Accordingly, the court does not consider the failure to give the adverse inference charge a ground of error even though a family member is a witness who might naturally be produced. Hall v. Burns, 213 Conn. 456,470 (1990).
The defendants also assert error in the fact that the Court did not charge that future losses "must be based on an estimate of reasonable probabilities, not possibilities" as requested by the defendants. The Court did charge the jury with respect to the burden of proof imposed upon the plaintiff. The Court also advised the jury that their determinations could not be based upon speculation or guess work and that to the extent that they found that the plaintiff had not sustained his burden of proof with respect to any of the injuries they should not award any damages for such claimed injuries. The Court does not find that there was reasonably probable that the jury was mislead by anything contained in the court charge. State v. Shanks, 34 Conn. App. 103
(1994).
The defendants also claim error in the failure of the Court to charge as requested with respect to future damages and the discount to be applied thereto. The defendants requested the Court to charge that the jury must adjust the amount of any future loss to a present or discounted value and that they should take into account not only the future course of interest rates but, also, the future course of the rate of inflation, rates of growth in wages or increase in cost. The request to charge, also, stated that the reason for taking into account those factors were to the fact that they would be making a present payment for damages that would occur from time to time through the years in the future. With respect to future losses the Court charged the jury that they should keep in mind that to the extent that they determined to award such damages, the jury should keep in mind that they are making a present monetary award for expenses and losses that will be incurred periodically in the future and that the expenses and losses may be different in the future than they are today. The Court also advised the jury that they heard considerable evidence with respect to the discounting to present value and, with respect to such claims, they should attempt to determine the present value of CT Page 10549 such expenses and losses and award only the present value as damages. The court also instructed the jury that they might take into account the testimony of Professor Crakes and Professor Drescher were called as witnesses by the respective parties. Testimony of the economic experts took place during the latter stages of the trial with extensive examination and cross examination of the economic experts relating to the factors involved in making a present award for future monetary damages. The Court believes that the charge was a sufficient guide to the jury.
The defendants also claim error in the fact that the Court did not charge as requested with respect to experts. The defendants assert that the charge did not specifically contain a statement that the jury "must reject the testimony of an expert to the extent that they find it is based on subordinate facts which they do not find proven." The Court charged the jury with respect to weighing the credibility of any witness and, also, a specific charge with respect to the treatment of expert witnesses. The Court advised the jury that no matter what the expertise may be of a particular witness the opinion is still subject to review at their hands and is not binding upon them. The Court further charged the jury that is for the jury to determine what weight they will give to the opinion, including whether or not the expert has produced a rationable and reasonable basis in support of the opinion, and whether "there is a basis and support for the opinion and is that basis reasonable and logical". The Court believes the charge to the jury and experts fairly presented the case to the jury for its deliberations. Giannitti v.Stamford, 25 Conn. App. 67, 63 (1991).
The defendants also claim that the court improperly restricted their utilization of testimony that the plaintiff had been charged, shortly before trial, with sexual assault in the first degree on a young girl. Initially the Court took great pains to avoid the unnecessary illiciting of such evidence before the jury. However, during an examination of one of the plaintiff's witnesses, the witness testified that in May of 1994 the plaintiff was mildly depressed as a result of his lack of progress and lack of ability to function and that such depression was related directly to the motor vehicle accident in 1986. The Court thereupon allowed the defendant to cross-examine the witness, first in the absence of the jury, with respect to her knowledge of the criminal CT Page 10550 charge and the impact of that event upon the plaintiff's claimed depression.
The defendants, however, assert that the Court improperly restricted their utilization of the evidence of the pending criminal charges inasmuch as the defendants wanted to argue that the jury, in assessing future damages, could consider the fact that the plaintiff might be incarcerated for some period of time and therefore would not be incurring all the expenses claimed. To have permitted the defendants to make the arguments claimed would have significantly enlarged the scope of the trial and would have resulted in a trial as to whether the plaintiff did or did not commit the crime charged and if so what the likely penalty would be. Aside from its impact upon the presumption of innocence, the final result of all the evidence would, in the Court's opinion, have been speculative. The Court believes that it properly restricted the utilization of the evidence.
The defendants presented evidence that primary generalized epilepsy of the petit mal type is not caused by trauma. The defendants assert that the jury must accept that evidence and could not award damages for the epilepsy claimed by the plaintiff. The plaintiff however produced a qualified expert neurologist who had devoted many years of practice to the treatment of epilepsy. The plaintiff's expert testified that in his opinion the epilepsy sustained by the plaintiff was caused by the trauma of the motor vehicle accident of July 1986. While there was abundant evidence produced by the defendants that the petit mal epilepsy could not be caused by the trauma sustained by the plaintiff, the plaintiff produced contrary evidence and the jury, if they wished to credit the plaintiff's expert, could have properly awarded damages for such a condition.
During the closing argument to the jury, counsel for the plaintiff stated to the jury that he believed the Court would instruct the jury that if a person has a pre-existing condition which is lighted up or made worse by an accident the person who causes that injury or causes the aggravation is responsible for the full effects of the aggravation. Prior to the Court delivering its instruction to the jury, counsel for the defendants noted that there was suggestion of aggravation of a pre-existing condition and CT Page 10551 there had been no evidence of such aggravation.
The Court instructed the jury as to the damages that they might award and instructed the jury that there was no claim that a pre-existing condition was aggravated. The Court further instructed the jury that they could award damages to the extent that they found that the injuries or the effects thereof were made more serious because of any pre-existing condition of the plaintiff. The Court believes that the charge was sufficient guidance for the jury.
The defendants also claim that the verdict was excessive. The plaintiff produced evidence that as a result of the accident he sustained a closed head injury; brain damage; loss of cognitive function; a lowering of his I.Q. scores from the below average range to borderline retarded range; posttraumatic epilepsy; loss of adaptive function so that he was no longer capable of independent living that he would need assistance in his living arrangements for the remainder of his life; that such assistance was currently being provided by his parents at no cost; and that the foregoing injuries were permanent. The plaintiff had a life expectancy of approximately fifty-two years. Apart from the economic losses, it might be expected, if the jury were to credit the plaintiff's evidence, that a substantial verdict would be rendered. In addition, the plaintiff had medical expenses at the time of trial of approximately $12,000; future medical expenses discounted to present value, in the amount of $30,000. The plaintiff suffered a loss of earning capacity and the figures offered in evidence covered a wide range but were at least $120,000 and current assisted living expenses would cost $39,600 per year at the time of trial. The verdict does not shock the sense of justice nor compel a conclusion that the jury was influenced by partiality, prejudice, mistake or corruption and is not excessive with the rule of such cases as Barry v. Loiseau, 223 Conn. 786,812 (1992).
The parties have also argued before the court their respective claims as to the reasonableness of fees to be paid to witnesses who testified on behalf of the plaintiff. Under Connecticut General Statutes § 52-260(f):
 "When any practitioner of the healing arts as defined in section CT Page 10552 20-1 . . . is summoned to give expert testimony in any action or proceeding, the court shall determine a reasonable fee to be paid to the practitioner of healing arts . . . . and taxed as part of the cost in lieu of all witness fees payable to the practitioner of the healing arts. . ." See generally Brown v. Sheinbaum, 4 Conn. L. Rptr. 210 (1991) (Lewis, J.).
The parties also have reached an agreement as to the time in which the witnesses spent testifying in court as well as the travel time expended by those witnesses.
Dr. Fink came from Wilmington, Delaware, and he testified that he charges an hourly rate of $980 for the first hour and $500 for each additional hour and plaintiff has submitted a charge of $8700 as part of his taxation of costs. Dr. Fink testified for four hours with eight hours of travel time and incurred airfare charges. The Court determines a reasonable fee for Dr. Fink in the amount of $3600 plus expenses incurred for airfare based upon a reasonable charge of $300 per hour.
The plaintiffs have submitted a charge for Dr. Siegel in the amount $12,000. Dr. Siegel testified that he charged $4500 for one half a day and $2500 for one half a day on two other occasions plus additional charges for being on "standby." Dr. Siegel testified on three occasions and consumed seven hours of testimony with three hours of travel time and the court determines that a reasonable charge for taxable cost purposes is $3000 again based upon a reasonable charge of $300 per hour.
The plaintiffs have submitted a charge of $2700 for Dr. Porto who testified two separate days consuming four and one half hours of testimony and two hours of travel for a total of six and one half hours. The Court determines that a reasonable charge for taxable cost purposes for Dr. Porto is in the amount of $1950.
Plaintiffs have also submitted a charge for Dr. Koeingsburg in the amount of $1500. Dr. Koeingsburg CT Page 10553 testified for four hours and consumed one hour in travel time. Accordingly, the Court finds that $1500 is a reasonable charge for taxable cost purposes.
The plaintiff also submitted charges for Dr. Schuster and Dr. Seltzer both of whom are psychologists, and for Professor Crakes who is an economist. These individuals are not practitioners of the healing arts within the meaning of General Statutes § 52-260(f) and § 20-1 and therefore no fees may be taxed as cost for these individuals except for those fees that may be taxed pursuant to General Statutes § 52-260(a).
For the reasons set forth herein, the motion to set aside the verdict is denied.
WILLIAM B. RUSH, JUDGE