STATE OF CONNECTICUT *v.* KEVIN CATO
(6897)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued January 12—decision released May 8, 1990

*Thomas Ullman,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from his conviction, after a jury trial, of possession of narcotics with intent to sell, in violation of General Statutes § 21a-277 (a). He claims that the court's exclusion of a statement made by him to the arresting officer violated evidentiary principles as well as his state and federal constitu-

tional rights to present a defense. He also claims error both in the court's denial of his request for the jury to view the scene of the alleged crime from the same point of surveillance as was used by the police to observe him just prior to his arrest and in its failure to give a certain requested jury instruction.

The jury could reasonably have found a number of relevant facts. Two police officers, Joseph Greene and Richard Randall, received information from an informant that led to a narcotics investigation conducted at a particular location known to the officers as the locale of frequent narcotics activity. The informant described a man wearing a beige jacket, sweat pants with lettering on the leg and a hat as being involved in the sale of narcotics at that location. The officers drove by the area in an unmarked vehicle, looking for an individual matching the given description. They observed the defendant, who fit the description, standing on a corner in front of a market. They began surveillance from their vehicle, which they parked diagonally across from the market.

The day was clear and the officers had a direct and unobstructed line of vision to the corner on which the defendant was standing. They observed him for twenty to thirty minutes without using binoculars or other vision enhancement equipment. During the period of surveillance, Greene observed the defendant walk back and forth, and enter and exit the market twice. He observed a male approach and have a discussion with the defendant, who was holding a brown paper bag. He then saw the male hand money to the defendant, and the defendant reach into the bag and then hand something to the male.

Randall observed the defendant, who was holding a brown paper bag, approach a male and engage in what appeared to be a hand-to-hand narcotics transaction.

Because the defendant's back was toward him, however, Randall did not actually see money change hands or the defendant reach into the bag. Both officers, on the basis of their training and experience, believed that the exchange had been an illegal narcotics transaction.

The officers then moved their vehicle and parked approximately twenty-five feet from the defendant. They got out of the car, displaying their police badges on chains around their necks, and approached him. The defendant threw the paper bag onto the ground. Greene followed the defendant into the store, and Randall kept sight of the bag and picked it up. He opened the bag and found inside it a potato chip bag containing sixteen glassine packets of powder, later identified as cocaine.

Randall then entered the store, and the defendant was placed under arrest. A search of him was conducted incident to his arrest, and $68 was found in his pockets, although no drugs or drug paraphernalia were found. At trial, both officers testified that it is unusual for a "mere user" of narcotics to carry such a large number of packets of cocaine and that it is not unusual for one person to sell the drugs while another person holds the money.

At trial, Gary Grant, the son of the market's proprietor, testified for the defendant. Grant, who had known the defendant for many years, testified that on the day of the defendant's arrest, a man named Brooklyn, whom Grant had never seen before, entered the store between 1:30 and 1:45 p.m. He also testified that the defendant first entered the store that day after 2 p.m. and that, fifteen to twenty-five minutes later, Brooklyn asked the defendant to throw away a brown paper bag. Grant stated that the defendant then went outside and threw the bag toward a trash container. Shortly after the defendant returned from outside, the

two police officers entered the store and arrested the defendant. The witness testified that he and others told the officers that the defendant was throwing away the bag for someone else, but that no one said that the defendant was mistakenly being arrested. Grant also stated that no one confronted Brooklyn about his alleged ownership of the bag containing the drugs. Grant stated that the bag in evidence, which was the same bag that the officers had seen the defendant discard and which one of them had immediately retrieved, was not the bag given to the defendant by Brooklyn.

At trial, the defendant, through an investigator, presented a videotape depicting the street corner in front of the market as seen from the surveillance point. The tape was filmed using a zoom lens to provide a closer view than that normally provided by a .35 mm camera. The defense also introduced a map of the area drawn to a scale of one inch to forty feet. Both parties, during closing arguments, stated that the distance from the point where the police officers were located during surveillance of the defendant to the point where the defendant was standing at that time was 600 feet.

I

The defendant first claims as error the exclusion of the answer of one of the arresting officers to the question of whether the defendant, at the time of his arrest, had denied ownership of the narcotics in the bag. The defendant claimed that the testimony was relevant to show his state of mind because intent was an element of the crime with which he was charged.

The statement in question was excluded by the court on the ground that it was inadmissible hearsay. The defendant argued that it was admissible under the state of mind exception to the hearsay rule because it was relevant to the question of knowledge of the presence of the drugs in the bag as well as to his intent.

A defendant's denial of guilt upon being accused and arrested is obviously self-serving.[1] An out-of-court statement denying guilt, therefore, is not admissible if offered for its truth. *State* v. *McDowell,* 179 Conn. 121, 125, 425 A.2d 935 (1979); *State* v. *Savage,* 161 Conn. 445, 448, 290 A.2d 221 (1971); *State* v. *Carnegie,* 158 Conn. 264, 272, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455 (1969). Such a statement offered, however, to show a defendant's state of mind prior to or during the commission of a crime may be admissible under the state of mind exception to the hearsay rule. 6 J. Wigmore, Evidence (Chadbourne Rev.) § 1732. An out-of-court statement made after the completion of a criminal act is not admissible under the state of mind exception as to the intent or motive underlying that completed act. Id.; see also *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 227 A.2d 548 (1967). To be admissible under the state of mind exception, the statement must also have been made in a natural manner, in good faith and without apparent motive to falsify. *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* supra; 6 J. Wigmore, Evidence, supra.

The defendant relies on *State* v. *Silveira,* 198 Conn. 454, 474, 503 A.2d 599 (1986), which held that direct testimony of the defendant about a statement of another, although self-serving, is admissible if not offered for its truth but for its effect on the defendant's state of mind. Here, however, the defendant sought to introduce into evidence, through the testimony of a police officer, his own out-of-court statement denying guilt after the alleged crime had occurred, and at the time of being arrested by the police on a serious drug charge. It was temporally unrelated to the defend-

---

[1] A statement that is made out-of-court and that is favorable to the interest of the declarant is considered "self-serving." 29 Am. Jur. 2d, Evidence § 621.

ant's state of mind prior to or during the alleged crime. There is a difference between a statement relating to the effect on the state of mind prior to or during the commission of a crime, and a denial of the crime after the events constituting the crime have ended. The statement here was obviously self-serving and made in the presence of a clear motive to falsify, and was inadmissible under the state of mind exception to the hearsay rule.

Although the defendant objected to the exclusion of his declaration denying guilt on evidentiary grounds, he did not do so on the constitutional ground he now asserts, the denial of his right to present a defense. "Whether a trial court's erroneous restriction of a defendant's or defense witness's testimony in a criminal trial deprives a defendant of his due process right to present a defense is a question that must be resolved on a case by case basis." *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988). Here, it was not the direct testimony of a defense witness but the testimony that might have been elicited on cross-examination of a prosecution witness, during the presentation of the state's case, that was restricted. Furthermore, there was no erroneous exclusion of evidence. The court excluded the statement in conformity with the rules of evidence and denied the defendant neither an opportunity to present a defense nor his right to a fair trial.

## II

The defendant next claims that the court's denial of his request for the jury to view the scene from the point of surveillance constituted an abuse of discretion. The decision as to whether to permit a jury to view the scene of the crime is within the sound discretion of the trial court. *Dickson* v. *Yale University,* 141 Conn. 250, 255, 105 A.2d 463 (1954); *State* v. *Flynn,* 14 Conn. App. 10, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct.

226, 102 L. Ed. 2d 217 (1988). The court should consider whether viewing the scene is necessary or important so that the jury may clearly understand the issues and properly apply the evidence. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 71, 381 A.2d 559 (1977); *State* v. *Flynn,* supra.

Here, our review indicates that there was sufficient evidence before the jury in the form of testimony, a map, a videotape and photographs. A first-hand view of the scene was cumulative and neither necessary nor important to obtain a clearer understanding of the issues or the evidence. The court did not abuse its discretion by denying the defendant's request.

### III

Finally, the defendant claims that the court erred in failing to give to the jury a requested instruction to the effect that mere acceptance of a package containing narcotics is an insufficient basis from which to infer knowledge of its contents. "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). The defendant concedes that the court instructed the jury as to the requirement of a knowing possession of narcotics and that such knowledge had to relate to both the presence and the narcotic character of the substance.

We conclude that the instructions as given, taken as a whole, provided the jury with a clear explanation of the elements of the crime charged and afforded the jury proper guidance for its determination as to whether those elements were proved. See *State* v. *Thompson,* 20 Conn. App. 290, 293, 567 A.2d 837 (1989). While

the requested instruction was a correct statement of the law, it was not necessary that it be included verbatim in the court's instructions to the jury.

There is no error.

In this opinion the other judges concurred.