STATE OF CONNECTICUT *v.* BRIAN TAYLOR
(8262)

DALY, NORCOTT and CRETELLA, Js.

Argued September 13—decision released October 16, 1990

*William Holden,* public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *John Smriga,* for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, for the sale of cocaine by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The defendant challenges the trial court's determination that there was sufficient evidence for conviction and its drawing of adverse inferences from the defendant's failure to produce certain witnesses. We disagree and affirm the judgment of the trial court.

From the evidence, the trial court could have reasonably found the following facts. On May 17, 1988, Officers Richard Herlihy and Nicholas Ortiz of the Bridgeport police department, were conducting a narcotics surveillance in the area of the Marina Village Apartments in Bridgeport. The officers stationed themselves behind a three foot high fence located 120 feet from the parking lot adjacent to building thirty in Marina Village and began their surveillance with binoculars at about 8:15 p.m. At about 8:40 p.m., Herlihy observed a man enter the parking lot, approach and talk with the defendant on the south side of building thirty. The defendant then handed a small item to the man in exchange for some cash. Immediately thereafter, the man left.

At about 9:15 p.m., a black Plymouth pickup truck, driven by a man later identified as Richard Martinez, entered the area. Martinez got out of the truck and talked with the defendant. The defendant proceeded about twenty feet to the back of building thirty, removed an object from the ground and returned to hand Martinez a clear plastic bag. Martinez put the bag in his pocket, gave money to the defendant, and then drove off. Herlihy radioed other police units to apprehend Martinez, who subsequently was arrested and searched. The plastic bag was recovered from his person and its contents were later analyzed and identified as cocaine. Martinez said that he purchased the cocaine from the defendant for $600. The police found $601 on the defendant when he was arrested.

At trial, the defendant denied that he had been involved in any drug transaction and offered evidence that the $601 on his person was rent money given to him by his mother. The state offered the testimony of Officers Herlihy, Ortiz and Calixto Sanchez, as well as the drug buyer, Martinez, to support its allegation that the defendant had engaged in a drug transaction.

The trial court stated that it was convinced beyond a reasonable doubt that the defendant was guilty. The trial court then increased the defendant's bond and set a date for the sentencing hearing. At that point, the defendant requested an immediate hearing to argue for a bond reduction. During the bond reduction argument, the trial court explained why it would not reduce the bond and why it had found the defendant guilty.

"I found the testimony of Detective Herlihy to be most credible. I did not find [the defendant's] testimony to be credible in most aspects. I did not find Mr. Martinez's testimony to be credible in any aspect, as a practical matter. . . . And I found that the evidence was overwhelming. This gentleman [the defendant] sold drugs. His girl friend never came to court. Mr. Gilchrist was here, I understand, and wouldn't testify. There were supposedly other people who were never here. So these are things I'm only telling you [defense counsel] because [the defendant will] wonder why the judge found [him] guilty. Those are the reasons."

The defendant first claims that there was insufficient evidence to convict him. " ' "Appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task: We must first review the evidence construing it in the light most favorable to sustaining the trial court's verdict. . . . ' " 'We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the [trier of fact] could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . .' " ' State v. Plourde, 208 Conn. 455, 458, 545 A.2d 1071 (1988), quoting State v. Rollinson, 203 Conn. 641, 665–66, 526 A.2d 1283 (1987), and cases cited therein." . . . ' " (Citations omitted.) State v. Allen, 216 Conn. 367, 380–81, 579 A.2d 1066 (1990).

When we apply this standard, there is no question that the evidence before the court established proof beyond a reasonable doubt of the defendant's cocaine sale. Herlihy testified that he witnessed the transaction between the defendant and Martinez. Martinez, moreover, admitted purchasing the cocaine from the defendant for $600, and $601 was found on the defendant. The trial court found that Herlihy was a credible witness, whereas it questioned Martinez' credibility and presumably did not believe the testimony of the defendant or his witnesses. " ' "The trier of fact determines with finality the credibility of witnesses and the weight to be accorded their testimony." ' " *State* v. *Crump*, 201 Conn. 489, 491, 518 A.2d 378 (1986). Any part of a witness' testimony may be believed or disbelieved by the trier of fact. *State* v. *Rothenberg*, 195 Conn. 253, 257, 487 A.2d 545 (1985); see also *State* v. *Amarillo*, 198 Conn. 285, 289, 503 A.2d 146 (1986). "This court does not retry the case or evaluate the credibility of the witnesses." *State* v. *Amarillo*, supra. Therefore, viewed in a light most favorable to sustaining the trial court's verdict, the evidence clearly established the defendant's guilt beyond a reasonable doubt.

The defendant's second claim is that the trial court improperly drew adverse inferences from the defendant's failure to produce as witnesses his girl friend, Anthony Gilchrist and other unnamed persons. The defendant asserted that he was actually at his girl friend's home for a portion of that time on the night when Herlihy claimed to have observed him in the drug transaction. The defendant also testified that Anthony Gilchrist was at the same location where the drug transaction occurred and was wearing a jacket similar to the defendant's, thus questioning Herlihy's identification of the defendant as the seller.

The defendant bases this claim upon the trial court's comments during the postconviction bond reduction

argument. The court stated, when it rendered its decision that, "after reviewing all the evidence, the court [was] convinced beyond a reasonable doubt" of the defendant's guilt. It was only during the bond argument that the comments occurred concerning the defendant's failure to produce witnesses. The court also stated that it found Herlihy's testimony most credible and did not believe either the defendant or Martinez. The court gratuitously offered these comments to the defendant as an explanation of both the conviction and the refusal to reduce the defendant's bond. Therefore, the gratuitous comments of the trial court during a post conviction bond argument were extraneous to the defendant's conviction and thus not germane to the trial court's decision.

Even if we were to conclude that the trial court had drawn negative inferences against the defendant for failure to produce his girl friend, Gilchrist and other unnamed witnesses, it would have been harmless error because absent these negative inferences, the weight of the other evidence before the trial court overwhelmingly led to a finding of guilty.[1] Although it was harmless error in this case, ordinarily a trial court, when drawing negative inferences against a party, must inquire into certain preliminary matters. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960); see *Blake* v. *Blake,* 211 Conn. 485, 493, 560 A.2d 396 (1989). First, it must be shown that the party could reasonably be expected to produce the witness because that witness possessed peculiar or superior informa-

---

[1] Whether an error is harmful or harmless depends upon whether it affected the verdict. Unless the defendant claims at trial that the error deprived him of a constitutional right, he bears the burden of proving its harmfulness. If the record discloses that the error could not reasonably have affected the verdict, it was harmless and is not reversible error. *State* v. *Murrell,* 7 Conn. App. 75, 91, 507 A.2d 1033 (1986), and cases cited therein. Here, the defendant has not met his burden of establishing harmfulness and the record supports the trial court's finding.

tion material to the case, that the party would produce, if favorable. *Secondino* v. *New Haven Gas Co.,* supra, 675; see *State* v. *Anderson,* 212 Conn. 31, 43, 561 A.2d 897 (1989). Second, the party must be able to procure the witness' physical presence in the court. *State* v. *Wood,* 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). Here, the *Secondino* requirements were not addressed and, thus, the trial court could not draw any adverse inferences against the defendant.[2] If it did draw such negative inferences, the error would have been harmless in view of the remaining substantial evidence of the defendant's guilt.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] Apparently, a habeas corpus ad testificandum was issued for Gilchrist, but he refused to testify.