STATE OF CONNECTICUT *v.* RAFAEL CINTRON
(13626)

Foti, Heiman and Schaller, Js.

Argued May 25—decision released September 5, 1995

*Joseph J. Romanello,* assistant public defender, with whom, on the brief, was *John Booth,* legal intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Robert Katz,* senior assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts[1]

---

[1] The defendant was charged in two separate two part informations, each alleging, in the first part, a violation of General Statutes § 21a-279 (a). The

of possession of a narcotic substance in violation of General Statutes § 21a-279 (a).[2] On appeal, the defendant asserts that the trial court improperly (1) denied his motion to allow the jury to view the surveillance site and (2) denied his motion for a judgment of acquittal when the evidence was insufficient to support a verdict of guilty. We disagree and affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On March 23, 1993,[3] members of the Norwalk police department's special services division were engaged in a surveillance operation in the area of Ely Avenue and Lowe Street in Norwalk. This area had been selected by the division because of numerous complaints from citizens concerning narcotics trafficking. The police also had information that an individual known as "Dominican Ralphy" from Paterson, New Jersey, was engaged in cocaine transactions in that neighborhood.

first information concerned events that occurred on March 23, 1993; the second concerned events that occurred on May 11, 1993. The two informations were consolidated at trial and each resulted in a conviction. The defendant then pleaded guilty under the *Alford* doctrine; *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); to the second part of each information, charging him with having four previous convictions for possession of narcotics.

[2] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[3] Both of the claims raised in this appeal relate only to the defendant's conviction on the charge that arose out of the incident on March 23, 1993. No claim has been raised regarding his conviction for the May 11, 1993 incident. Further, the record reflects that the defendant appealed from his conviction under Docket No. CR93-60655 and took no appeal from his conviction under Docket No. CR93-61216. Thus, we limit our discussion to the single incident that occurred on March 23, 1993.

At about 4:20 p.m., Officer Charles Perez, acting as the surveillance officer, positioned himself in a wooded area about fifteen to twenty feet above the sidewalk and about sixty to sixty-five yards away from a parking lot near an abandoned house off Lowe Street. Perez was equipped with a pair of high-powered binoculars that could make an object 1000 feet away appear as if it were only 192 feet away. Although the sky was overcast, it was still daylight and Perez had a clear view of the parking lot as well as a number of small businesses in the area, including the Red Shingle, Deflorio's Market, a Wash and Dry Laundromat and Rivera's Grocery Store. In addition, the trees in the area had very few leaves and, therefore, did not obstruct Perez' view.

At about 4:45 p.m., Perez observed a gray Audi pull into the parking lot. Perez recognized the driver of the Audi as Israel Concepcion, Sr., whom he knew from previous investigations into narcotics trafficking. Concepcion stopped the vehicle and rolled down the driver's window. A heavyset Hispanic male, later identified as Victor Contreras, approached the vehicle and conversed with Concepcion for a few seconds. Contreras then walked into the laundromat.

Shortly thereafter, Contreras emerged from the laundromat accompanied by the defendant. Contreras stationed himself outside the laundromat while the defendant approached the vehicle and handed Concepcion a small package. Although Perez could not identify what the package contained, he observed Concepcion take the package in his left hand. Perez then observed Concepcion hand the defendant money with his right hand. The defendant and Contreras went back into the laundromat and Concepcion drove away.

Perez, on the basis of his training and experience, concluded that he had witnessed the sale of narcotics. This conclusion was based on his past experience that

persons engaged in the illegal sale of drugs often work in pairs: one of the participants takes the order from the customer and the other delivers the drugs and collects the money. Additionally, a third person is sometimes involved to hold the money received from these illegal transactions. Perez immediately radioed the nearby arrest team that Concepcion, driving a gray Audi, had purchased narcotics.

The arrest team followed Concepcion until he stopped and parked his vehicle on Washington Street near a post office. When Concepcion exited his vehicle and approached a mailbox, the arrest team intercepted him and informed him that they were police officers. Officer Melissa Lee told Concepcion that he had been observed purchasing narcotics and asked him where the narcotics were. Concepcion told Lee that they were in his left jacket pocket, from which Lee retrieved three small bags of a substance that field-tested positive for the presence of cocaine.

Concepcion was arrested and transported to police headquarters in a patrol car. The arrest team then proceeded to the location where the sale had been witnessed by Perez. The defendant was arrested in the laundromat and was taken outside where he was identified by Perez as the man who had made the delivery of the package to Concepcion and had received the money in return. In the defendant's possession at the time of his arrest was $92. Contreras was arrested inside Rivera's Market which is accessible from the laundromat by a connecting door. In Contreras' possession at the time of his arrest was $855.

I

The defendant first asserts that the trial court improperly denied his motion to allow the jury to view the crime scene from the surveillance site. We disagree.

Certain additional facts are necessary for the resolution of this issue. On February 8, 1994, the defendant filed a motion pursuant to Practice Book § 844[4] seeking a court order allowing the jury to view the area of the "alleged incident of March 23, 1993, from the point of the surveillance utilized by Officer Perez on that date." On February 10, 1994, the defendant withdrew the motion.

On February 14, 1994, the state rested and the defendant moved for a judgment of acquittal. The trial court denied the defendant's motion and the defendant rested without presenting evidence. The jury was then excused for the day and the defendant renewed his motion for acquittal, which was again denied.

On February 15, 1994, the defendant renewed his motion to permit the jury to view the crime scene from the surveillance site. In support of his motion, the defendant claimed that there was a dispute as to what Perez was able to see from his surveillance vantage point and that it would be beneficial to the jury's ability to determine the facts of the case if they could "utilize the same site and the same conditions." In response, the state asserted that the area was, at that time, under one foot of snow.[5] In addition, the state argued that the defendant had not presented any evidence to establish that the conditions at that time were substantially the same as they had been eleven months earlier at the time of the surveillance. The trial court denied the defendant's

---

[4] Practice Book § 844 provides in pertinent part: "When the judicial authority is of the opinion that a viewing by the jury of the place where the offense being tried was committed, or of any other place involved in the case, will be helpful to the jury in determining any material factual issue, he may in his discretion, at any time before the closing arguments, order that the jury be conducted to such place. . . ."

[5] We recognize that ordinarily "[r]epresentations and arguments of counsel are not evidence." *State* v. *Youdin*, 38 Conn. App. 85, 95, 659 A.2d 728 (1995), citing *State* v. *O'Brien*, 29 Conn. App. 724, 732, 618 A.2d 50, cert. denied, 225 Conn. 902, 621 A.2d 285 (1993).

motion, stating that the defendant had failed to demonstrate that the conditions of the surveillance site were substantially similar to those on the day the surveillance was conducted by Perez.[6]

"Pursuant to Practice Book § 844, a trial court may permit a viewing of the scene of the crime if it is of the opinion that a viewing would be helpful to the jury in determining some material factual issue in the case." *State* v. *Flynn*, 14 Conn. App. 10, 28, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). The determination as to whether to permit the jury to view the scene of a crime is within the sound discretion of the trial court. Id.; *State* v. *Cato*, 21 Conn. App. 403, 409, 574 A.2d 240, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990). Thus, unless the action of the trial court in denying the motion constitutes an abuse of discretion, the decision of the trial court must stand. *State* v. *Flynn*, supra, 28.

In deciding a motion to view the scene "[t]he court should consider whether viewing the scene is necessary or important so that the jury may clearly understand the issues and properly apply the evidence." *State* v. *Cato*, supra, 21 Conn. App. 410; see also *Giannitti* v. *Stamford*, 25 Conn. App. 67, 71–72, 593 A.2d 140, cert. denied, 220 Conn. 918, 597 A.2d 333 (1991). "Although discretionary, the power to authorize a view of the scene should be invoked only after the court is satisfied that the present conditions at the site are the same as those that existed on the date of the underlying incident, and that such a personal inspection is fair to both parties and reasonably necessary to do justice." (Internal quotation marks omitted.) *Giannitti* v. *Stamford*, supra, 72, quoting *Mackin* v. *Mackin*, 186 Conn. 185, 190, 439 A.2d 1086 (1982).

---

[6] In denying the motion the trial court stated: "There has been no evidence before the court that the surrounding area is substantially the same today as it was when the surveillance was done by Officer Perez. Motion to view the surveillance site is denied."

Here, the trial court found that there was nothing in the record to indicate that the conditions that existed at the site were the same as those that existed on the day of the crime. It was incumbent upon the defendant as the moving party, to make a preliminary showing that the conditions were sufficiently similar to the conditions on the day of the occurrence as to make a view meaningful in the resolution of the issues in dispute. *Giannitti* v. *Stamford*, supra, 25 Conn. App. 72; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 9.3.2, p. 276.

Moreover, the defendant failed to persuade the trial court that a viewing of the surveillance scene was necessary or important to an understanding of the proper application of the evidence. The site, as well as Perez' position and location at the site, were fully described to the jury. The jury was presented with evidence regarding Perez' utilization of high-powered binoculars and Perez testified that he had an unobstructed view of the area due to the lack of foliage on the trees. Perez described in detail his sight lines and the areas to which he had a clear and unobstructed view. In addition to the testimony, the jury was shown a map of the area and the layout of the scene. The defendant also had an adequate opportunity to cross-examine Perez. The jury, therefore, had sufficient evidence before it to allow it to understand the scene of the crime and a firsthand view was not necessary for the jury's understanding of the issues. See *State* v. *Cato*, supra, 21 Conn. App. 410.

We conclude that the trial court did not abuse its discretion in denying the defendant's motion for a view by the jury of the surveillance site.

## II

The defendant next asserts that the evidence was insufficient to sustain a conviction of illegal possession of a narcotic substance. Specifically, he asserts that the

evidence presented at trial regarding the incident on March 23, 1993, did not permit a jury to find that he was illegally in possession of cocaine. We are not persuaded.

"We begin our analysis by restating the principles that guide and define the scope of our review. When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Haggood,* 36 Conn. App. 753, 760, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995); see also *State* v. *Sivri,* 231 Conn. 115, 126, 646 A.2d 169 (1994).

"In applying this analytical framework to the circumstances before us, we acknowledge that it appears that the defendant's conviction is premised, in large measure, on circumstantial evidence. [I]t is of no moment that much of the relevant evidence may be circumstantial. . . . [T]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Haggood,* supra, 36 Conn. App. 760–61, quoting *State* v. *Simino,* 200 Conn. 113, 117, 509 A.2d 1039 (1986); *State* v. *Foster,* 202 Conn. 520, 536, 522 A.2d 577 (1987).

"We must also acknowledge in our review of the evidence that it is the right and the duty of the jury to draw reasonable and logical inferences from the evi-

dence. *State* v. *Weinberg*, 215 Conn. 231, 255, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Little*, 194 Conn. 665, 673, 485 A.2d 913 (1984). Moreover, the jury may draw inferences on the basis of facts that it finds as a result of other inferences. *State* v. *Weinberg*, supra, 255; *State* v. *Little*, supra, 673. [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991). We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984)." (Internal quotation marks omitted.) *State* v. *Haggood*, supra, 36 Conn. App. 761.

"In considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 35 Conn. App. 405, 414, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994); see also *State* v. *Little*, 194 Conn. 665, 674, 485 A.2d 913 (1984).

We also note that while it is necessary that the jury find that each element of the crime be proven beyond a reasonable doubt, it is not necessary that each of the basic and inferred facts underlying these conclusions be proven beyond a reasonable doubt. *State* v. *Adams*, 225 Conn. 270, 276–77, 623 A.2d 42 (1993); *State* v. *Garcia*, 37 Conn. App. 619, 624, 657 A.2d 691 (1995). Again, it is the cumulative impact of a multitude of facts that establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Haggood*, supra, 36 Conn. App. 761.

After a thorough review of the evidence, we conclude that the cumulative effect of the evidence was sufficient to permit the jury to have found the defendant guilty of possession of a narcotic substance. Perez, who had been qualified as an expert in the field of illegal drug transactions, testified that he observed the delivery of a small package from the defendant to Concepcion. In addition, Perez saw the defendant receive money from Concepcion in return. Perez recognized Concepcion from prior drug investigations and testified that, based on his experience, he believed that he had witnessed a drug transaction. When Concepcion was stopped by members of the arrest team, three small bags of cocaine were found in the left pocket of his jacket. At the time of his arrest the defendant had $92 in his possession. The evidence provided enough corroborative factors to permit a jury reasonably to conclude that the defendant was guilty of possession of narcotics. See *State* v. *Hall*, 165 Conn. 599, 345 A.2d 17 (1973); *State* v. *Baskins*, 12 Conn. App. 313, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).

The defendant claims, however, that despite this evidence, the fact that Perez could not identify the package delivered by the defendant to Concepcion as narcotics precludes his conviction for possession of narcotics. In support of this proposition the defendant relies on *State*

v. *Mierez*, 24 Conn. App. 543, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991). We conclude that the defendant's reliance on *Mierez* is misplaced.

In *Mierez*, this court was presented with a claim of insufficient evidence to support a conviction of the sale of narcotics in violation of General Statutes § 21a-277 (a).[7] Here, the defendant was convicted of possession of a narcotic substance in violation of § 21a-279 (a)[8] and, thus, the defendant's sufficiency claim is factually distinct from that presented in *Mierez*. "[I]n order to satisfy its burden of proof, [on a charge of sale of narcotics] the state [is] required to prove beyond a reasonable doubt that there was a sale as defined [by General Statutes § 21a-240 (50)], and that the delivery was of a narcotic substance . . . ." Id., 551. Here, the state needed to prove only that the defendant possessed a narcotic substance.

In addition, the surveillance officers in *Mierez* were not able to describe the object that the defendant handed to the alleged buyer and never saw money change hands. They also were not able to say that the small item that they saw Mierez deliver to the alleged buyer came from the narcotic stashes that Mierez had on his person. Id., 552. Additionally, a search of the alleged buyer failed to reveal any narcotics, nor did

---

[7] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[8] See footnote 2.

anyone see the alleged buyer dispose of anything. Id., 553. We, therefore, concluded that for a jury to find the defendant guilty of the crime of sale of narcotics under the facts of that case would permit the conviction to be rendered on the basis of mere speculation and conjecture. Id., 554. Here, however, Perez saw the defendant deliver a small package to Concepcion in return for money. In addition, when Concepcion was stopped and told that he had been seen buying narcotics, Concepcion indicated that the narcotics were located in his jacket pocket. Three small bags of cocaine were then retrieved from Concepcion's pocket.

We conclude that the jury could reasonably have inferred that the cocaine found in the possession of Concepcion had, shortly before, been in the possession of the defendant.[9] Thus, the claim of the defendant that the evidence was insufficient to support his conviction is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Since the defendant was charged with only possession of narcotics and not with the sale of narcotics, we do not decide whether the same evidence would have supported a conviction of the charge of sale of narcotics.