STATE OF CONNECTICUT *v.* COREY SABRE
(13809)

Foti, Lavery and Heiman, Js.

Argued October 1—officially released December 17, 1996

*Frederick D. Paoletti, Jr.*, with whom, on the brief, were *Paul C. Gusmano* and *Jerome J. Larracuente*, for the appellant (defendant).

*John C. Smriga*, senior assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Stephen J. Sedensky*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[1] three counts of risk of injury to a child in violation of General Statutes § 53-21,[2] one count of attempted sexual assault in the second degree in violation of General Statutes §§ 53a-71 (a) (1) and 53a-49 (a) (2),[3] and one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2).[4] The defendant was acquitted of

---

[1] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured or its morals are likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-49 (a) provides in pertinent part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

one count of sexual assault in the first degree, one count of sexual assault in the second degree, and two counts of risk of injury to a child. On appeal, the defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal as to the charge of sexual assault in the first degree when the evidence was insufficient to establish that the victim was under thirteen years of age at the time of the alleged offense, (2) permitted the defendant's conviction of sexual assault in the first and second degrees to stand when the evidence was insufficient to establish the element of penetration, (3) charged the jury by failing to specify that penetration is required to complete fellatio in both first and second degree sexual assault, (4) charged the jury by reading the statutory definition of sexual intercourse, and (5) instructed the jury as to the charge of risk of injury to a child. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. Over a period of three years, the defendant repeatedly had sexual contact with the younger sister of his girlfriend D. During the period of repeated sexual contact, the defendant was between twenty-two and twenty-six years of age and the victim, who was born on December 3, 1978, was between ten and fourteen years of age. The sexual contact began in the spring of 1989 when the defendant rubbed the victim's chest under her clothing while the victim was spending the night at the Bridgeport condominium that belonged to D and the defendant, who was D's boyfriend.

During the spring of 1990, the defendant and D were living together at the victim's parents' home in Fairfield. In the spring of 1990, when the defendant and the victim were alone in the house, the defendant compelled the victim to perform fellatio on him. The defendant put his penis into the victim's mouth, pushed her head back

and forth with his hand, and ejaculated in her mouth. The victim went into the bathroom and vomited.

In late November or December, 1992, the victim, her friend, S, the defendant and D were watching videos at the victim's parents' home. The defendant and the victim left in the defendant's car to return the videos and to retrieve some of D's clothing from the condominium that she shared with the defendant. After returning the videos, the defendant proceeded to his condominium at 103 Huntington Turnpike. The defendant and the victim entered the condominium. Once inside, the defendant called the victim into the bedroom and compelled her to perform fellatio on him. The defendant ejaculated in the victim's mouth, again causing the victim to vomit. The defendant then expressed his desire to have vaginal intercourse with the victim. When the victim refused, the defendant inserted his finger into her vagina and then proceeded to make an unsuccessful attempt to penetrate her vagina with his penis. The defendant then drove the victim back to her parents' home. Upon her return home, the victim was shaking and expressed a desire to go to bed. S asked the victim what was wrong, and the victim told S that the defendant had "done stuff" to her.

In May, 1993, D, the defendant, and the victim's friend, C, were at the victim's parents' home. The defendant offered to drive C home. The defendant, C and the victim left in the defendant's car and dropped C off at her house. The defendant then proceeded to a parking lot between Pequot and Center Streets in Fairfield. While sitting in the car, the defendant compelled the victim to performing fellatio on him. The victim put her mouth on the defendant's penis while the defendant pushed her head up and down.

About one month after the May, 1993 parking lot incident, during a seventh grade gym class, the victim

confided to her friend C that the defendant had been having sexual contact with her and that it made her uncomfortable. C told her mother who informed the victim's mother. After a discussion among the victim, her sister D and their mother, the police were informed. The victim subsequently gave a written statement about the sexual assaults to Detective William Young of the Fairfield police department, and also discussed the assaults with her school guidance counselor, William Bosch.

On April 21, 1994, the defendant was found guilty as previously set forth and sentenced on May 8, 1994, in accordance with his conviction. This appeal follows.

I

The defendant first claims that because the victim gave conflicting testimony regarding when the sexual assault in the first degree occurred, the evidence was insufficient to prove beyond a reasonable doubt that the victim was under thirteen years of age at the time of the offense, a necessary element of the crime of sexual assault in the first degree. The defendant further claims that the trial court violated his due process rights under the United States and Connecticut constitutions to be acquitted unless proven guilty of all essential elements of the crime charged. We are unpersuaded.

"When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Cintron*, 39 Conn. App. 110, 118, 665 A.2d 95 (1995).

Having carefully reviewed the evidence, we conclude that it was sufficient to support the jury's determination that the victim was under the age of thirteen at the time of the sexual assault in the first degree. At trial, the evidence disclosed that the victim was born on December 3, 1978. The evidence further disclosed that the victim performed fellatio on the defendant at her home in Fairfield. At the outset of her testimony, the victim expressed uncertainty as to the exact date of this incident. She testified, however, that she thought it took place a short time after the defendant had rubbed her chest in the spring of 1989 when the victim was ten years old. She thought she was in "about fifth or sixth" grade at the time but she was "not quite sure." When asked directly whether she remembered the year during which this act occurred, she indicated that it was in the spring of 1990 while she was in the fourth grade and eleven years old.[5]

The jury "determines with finality the credibility of witnesses and the weight to be accorded their testimony. . . . Any part of a witness' testimony may be believed or disbelieved by [the jury]." (Citation omitted; internal quotation marks omitted.) *State* v. *Taylor*, 23 Conn. App. 426, 429, 580 A.2d 1004 (1990). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and atti-

---

[5] The victim repeated second grade, which explains why she was eleven years of age in the fourth grade.

tude of the witnesses and to gauge their credibility." (Citations omitted; internal quotation marks omitted.) *State* v. *Cintron*, supra, 39 Conn. App. 119.

"In considering the evidence introduced in a case, [j]uries are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) Id. "[W]e rely on the good sense and judgment of American juries to weigh evidence with some element of untrustworthiness since such evidence is customary grist for the jury mill." (Internal quotation marks omitted.) *State* v. *Rivera*, 32 Conn. App. 193, 203, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993).

From the evidence, the jury could have reasonably concluded that the victim was under the age of thirteen at the time of the sexual assault in the first degree. Thus, the defendant's claim that there was insufficient evidence to find him guilty of sexual assault in the first degree is without merit.

## II

The defendant next asserts that there was insufficient evidence for the jury reasonably to find that the state had established beyond a reasonable doubt the element of penetration, an element necessary to prove the commission of sexual assault in the first and second degrees. The defendant further asserts that his convictions of sexual assault in both the first and second degrees deprived him of his due process rights under the United States and Connecticut constitutions to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. We are unpersuaded.

The defendant concedes that this claim was not properly preserved at trial, and thus seeks review of this claim under the doctrine of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We review this unpreserved claim because this court has previously held that "[u]npreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

We will not repeat the standard of review applied to a challenge to the sufficiency of the evidence, as that standard was fully set out in our analysis of the defendant's first claim.

The defendant claims that because the victim did not use the term "fellatio" while testifying in court, and never asserted that the defendant's penis entered her mouth or that the defendant's penis was in her mouth at the times of the ejaculations, the element of penetration was not established. We disagree.

With regard to each count of sexual assault, the victim testified that she had oral sex with the defendant,[7] speci-

---

[6] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

[7] Regarding the spring, 1990 incident, the victim testified as follows:

"Victim: He asked me to give him a blow. . . . He made me put my mouth on his penis. . . .

"Prosecutor: Now you indicated that he put his penis in your mouth?
"Victim: Yes.

"Prosecutor: What did he do then?

"Victim: He started pushing my head on to it. . . . Pushing my head back and forth. . . ."

The victim testified that in November or December of 1992, the defendant again asked her "to give him oral sex," and she gave him oral sex.

As to the May, 1993 incident in the parking lot, the victim testified on direct examination as follows:

fying that she "put [her] mouth on his penis" and he pushed her head "up and down" or "back and forth." Moreover, the prosecutor directly asked the victim, "Now you indicated that he put his penis in your mouth?" and the victim responded "Yes." General Statutes § 53a-65 (2) provides: "Penetration, however slight, is sufficient to complete . . . fellatio and does not require the emission of semen. . . ." Nonetheless, regarding the spring, 1990 and November or December 1992 counts of sexual assault, there was evidence that the defendant ejaculated into the victim's mouth, causing her to "throw up."[8]

The jury could have reasonably concluded from the evidence that the penetration element of the crime of sexual assault had been established beyond a reasonable doubt. Thus, the defendant's claim that the evidence was insufficient to find him guilty of sexual assault is without merit.

---

"Victim: We were sitting in the car and he asked me to have oral sex with him again. And he said this would be the last time.

"Prosecutor: Now, you said he asked you to have oral sex. I mean was he using that term, oral sex?

"Victim: No.

"Prosecutor: What's he saying?

"Victim: He asked me to give him a blow.

"Prosecutor: And what happened. . .

"Victim: I . . . had oral sex with him. . . . I put my mouth on his penis and then he started pushing my head up and down. . . ."

[8] Regarding the spring, 1990 sexual assault incident, the victim testified in relevant part:

"Victim: [H]e came in my mouth. And then I went and spit it out and then I started getting sick.

"Prosecutor: Now, you say he came in—came in your mouth.

"Victim: Yeah.

"Prosecutor: You mean he ejaculated?

"Victim: Yes.

"Prosecutor: And after he did that, what did you do?

"Victim: I went into the bathroom and then I started getting sick. . . . I was throwing up."

With regard to the November or December, 1992 sexual assault incident, the victim testified in relevant part: "I gave him oral—He—He—I had to

## III

The defendant next asserts that the trial court improperly charged the jury on the counts charging sexual assault in the first and second degrees by failing to inform the jury that penetration is necessary to complete fellatio. We disagree.

The defendant raises this issue for the first time on appeal. At trial, the defendant failed to request a charge on this issue or to take exception to the court's instructions. The defendant concedes that this claim was not properly preserved and thus seeks review of this claim under the doctrine of *State* v. *Golding*, supra, 213 Conn. 233.[9]

When the defendant claims that the court's instructions failed to inform the jury adequately of all the essential elements of the crime charged, a limited review is warranted, as it raises the possibility of a due process violation affecting the fairness of the trial. See *State* v. *Lanier*, 39 Conn. App. 478, 484, 664 A.2d 1202, cert. denied, 235 Conn. 931, 667 A.2d 1269 (1995).

Certain additional facts are necessary for a resolution of this claim. During the course of its charge, the trial court instructed the jury that sexual intercourse must be established beyond a reasonable doubt to justify a verdict of guilty on the charge of sexual assault in the second degree. "Insofar as it is relevant to this case, the term 'sexual intercourse' means vaginal intercourse or fellatio between persons. The word 'fellatio' comes from the Latin. It means oral stimulation of the penis. Penetration, however slight, is sufficient to complete sexual intercourse and does not require emission of semen."

give him oral sex. And then after that he came in my mouth and then I got sick again."

[9] See footnote 6.

The trial court further instructed the jury that sexual intercourse with another person must be established beyond a reasonable doubt in order to justify a verdict of guilty on the charge of sexual assault in the first degree. "As it's relevant here, sexual intercourse means fellatio between persons, certainly includes—perhaps is a better word—fellatio. Penetration, however slight, is sufficient to complete sexual intercourse and does not require emission of semen."

"[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

The defendant is correct that the trial court did not specifically utter the words "penetration is necessary to complete fellatio." The trial court did, however, repeatedly instruct the jury that (1) sexual intercourse is an essential element of sexual assault, (2) sexual intercourse means fellatio, and (3) penetration, however slight, is necessary to complete sexual intercourse. Our review of the charge as a whole leads us to conclude that the trial court adequately informed the jury that penetration was required to complete fellatio and thus

presented the case to the jury so that no injustice resulted.

## IV

The defendant next claims that, in light of evidence proffered at trial that the defendant inserted his finger into the victim's vagina, and the fact that no claim of digital vaginal penetration was alleged in the final long form information used in the prosecution of the defendant, the trial court improperly charged the jury by reading the statutory definition of sexual intercourse,[10] including the last sentence of the definition, which provides that "penetration may be committed by an object manipulated . . . into the genital . . . opening of the victim's body." General Statutes § 53a-65 (2). The defendant argues that the trial court's reading of the last sentence of the statute constituted prejudicial surprise in that it "placed a new assault 'in play' for the first time," thereby expanding "the information to allege a new, separate and distinct crime." The defendant further argues that the trial court's reading of the last sentence of the statutory definition of sexual intercourse violated his state and federal due process rights to be informed of the charges against him. We disagree.

The defendant concedes that this issue was not properly preserved at trial. The defendant again claims entitlement to review of this unpreserved claim pursuant to the doctrine of *State* v. *Golding*, supra, 213 Conn. 233.[11] We also note that the evidence regarding the digi-

---

[10] General Statutes § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

[11] See footnote 6.

tal vaginal penetration was not objected to at trial, nor was it the subject of a motion to strike.

The amended long form information charges the defendant with sexual assault in the first and second degrees and attempted sexual assault in the second degree in violation of §§ 53a-71 (a) (1),[12] 53-70 (a) (2)[13] and 53a-49 (a) (2).[14] "The fact that the information was in long form and cited . . . provision[s] in the General Statutes pertaining generically to . . . sexual intercourse afforded the defendant constitutionally adequate notice of the possibility that the trial court could ultimately incorporate the . . . statutory definition of sexual intercourse in its charge to the jury." *State* v. *Milardo*, 224 Conn. 397, 414–15, 618 A.2d 1347 (1993). The defendant "was clearly afforded notice of the offense with which he was charged and his defense suffered no prejudice because of the trial court's reading of the [statutory] definition of sexual intercourse. Where the defendant can demonstrate neither unfair surprise nor prejudice, he cannot claim an infringement of his constitutional right to fair notice of the crimes with which he is charged . . . ." Id., 414.

We conclude that the trial court's instructing the jury on the statutory definition of sexual intercourse did not, in the circumstances of this case, violate the defendant's constitutional right to be informed of the charges against him, and thus the defendant has failed to satisfy the third prong of *Golding*.[15]

V

Finally, the defendant asserts that the trial court improperly instructed the jury on the charge of risk of

[12] See footnote 1.

[13] See footnote 4.

[14] See footnote 3.

[15] The third prong of *Golding* states: "[T]he alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240.

injury to a child by stating that "[t]he deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of [§ 53-21]."[16] The defendant claims that this erroneous jury instruction deprived him of his due process rights by lessening the state's burden to prove each and every element of the charged offense beyond a reasonable doubt. We are unpersuaded.

Although the state's request to charge contained similar language, the defendant failed to file a request of his own nor did he except to the charge as given. Thus, the defendant seeks review of this unpreserved claim under the doctrine of *State* v. *Golding*, supra, 213 Conn. 239–40.[17]

In *State* v. *Schriver*, 207 Conn. 456, 542 A.2d 686 (1988), our Supreme Court examined the constitutionality of § 53-21. The Supreme Court held that, on its face, § 53-21 fails to articulate a definite standard for determining whether the conduct of a defendant is likely to impair the morals of a minor. Id., 461. The extensive judicial gloss on the language of the statute in *State* v. *Pickering*, 180 Conn. 54, 428 A.2d 322 (1980), however, made it clear " 'that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of [§ 53-21].' " *State* v. *Schriver*, supra, 463. Our Supreme Court further concluded that *Pickering* defines the confines of § 53-21 and "furnishes the standard by which to test whether the defendant has violated § 53-21 . . . ." Id., 463.

Here, the trial court instructed the jury on the charge of risk of injury to a child by quoting the actual language of § 53-21 in conjunction with the authoritative judicial gloss of *Pickering*. See id. As our Supreme Court has

---

[16] See footnote 2.

[17] See footnote 6.

held that *Pickering* both establishes the boundaries of § 53-21 and furnishes the standard by which to test whether the defendant has violated § 53-21, we conclude that the trial court's instructions did not violate the defendant's constitutional right to due process, and thus the defendant has failed to satisfy the third prong of *Golding.*[18]

The judgment is affirmed.

In this opinion the other judges concurred.